## City of Henderson v. Connell.

(Decided January 9, 1914.)

## Appeal from Henderson Circuit Court.

1.  Statutes—Repeal by Implication Not Favored.—Repeals by im-
plication are not favored by the courts, and no statute will be
construed as repealing a prior statute, unless it be so clearly
repugnant thereto as to admit of no other reasonable construction.

2.  Statutes—Inconsistent Statutes—Rule as to Construction.—When
two statutes bearing on the same subject appear on their face
to be inconsistent with each other, the court will harmonize them
if possible so as to allow both statutes to stand;  or  if that
cannot be done without violence to some part of the language
employed in one or both of the statutes, the rule is to construe
them so that both will stand so far as possible, and wherein
any part of either is irreconcilable with any part of the other,
the latest statute stands, while the inconsistent part of the former
is deemed to have been repealed.

3.  Statutes—Act of March 18, 1912—Street Improvement.—The Act
approved March 18th, 1912 (Acts 1912, p. 380), amending Chapter
89 of the Kentucky Statutes constituting charters of cities of
the third class, does not repeal section 3456 of the  Kentucky
Statutes, which provides that the cost of  street  intersections
shall in all cases be paid by the city.

4   Municipal Corporations—Street Improvement.—Under Chapter 89
of the Kentucky Statutes as amended by the Act of March 18th,
1912, a city of the third class may provide that the cost of street
improvements may be paid upon the ten-year plan, both as to
the part thereof which is to be paid by the property holder, and
the part thereof that is to be paid by the city; it cannot, how-
ever, require the cost of street intersections to be paid by the
property-owner.

JOHN C. WORSHAM for appellant.

CLAY & CLAY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This case raises the question of the right of cities of the third class to assess the cost of improving intersections of streets with sidewalks, curbs and gutters, against the abutting property.

The legislative charter granted to the city of Henderson in 1867 provided that all intersections of streets should be graded, guttered and stepping stones placed or cross-walks made, at the expense of the city; and by the amendment of 1880, said provision was re-incorporated into the charter of that year.

Henderson is a city of the third class; and by the general Act of 1893, being Chapter 89 of the Kentucky Statutes, and constituting the charter of cities of the third class, it is provided as follows:

"In all cases of the improvement of the streets and gutters, curbs and paving sidewalks, the improvement of the intersections thereof shall be paid by the city." Ky. Stats., sec. 3456.

By an act approved March 18, 1912, the Legislature amended Chapter 89 of the Kentucky Statutes, by an act entitled, "An Act to Amend the Charters of Cities of the Third Class," the first section thereof, reading in part, as follows:

"Sec. 1. Chapter 89 of the Kentucky Statutes, Carroll's Revision of 1909, the same being the charter of cities of the third class, is hereby amended by adding thereto after section 3459 thereof, the following section as section 3459a, which section shall read as follows: to-wit:

"Section 3459a. The common council may provide that the construction or reconstruction of any of the sewers, streets, alleys, public ways and sidewalks shall be made on the ten (10) year plan; and thereupon when any such improvement or reimprovement has been completed and accepted a notice shall be given by publication in a newspaper of general circulation published in the city, requiring the property owner to pay the assessments made against their property for such work, and if such assessments be not paid by such property owners, then to provide a fund for the payment of such portion of the entire cost of such improvement or reimprovement as the property holder shall be liable for, but may not pay in cash in conformity with said notice, the common council is authorized to borrow money at a rate of interest not exceeding six per cent per annum in anticipation of the collection of a special tax or assessment for such im-

provement from such property holders, and to issue the
bonds of the city therefor in manner and form herein
provided, pledging the liens on the property and any
fund which the city may have set apart for said purpose
and the faith and credit of the city where the city has been
authorized to pledge its faith and credit, or any or all
of said pledges may be given by the city for the payment
of the principal and interest of said bonds as the city
may desire. The city may, if it so desires and has been
authorized by law to pledge the faith and credit of the
city in payment of its part of the cost of any improvement
made hereunder, issue bonds for its part of the cost of
the improvement in like manner as is herein provided for
the issual of bonds in payment of the cost of the improve-
ment on behalf of the property holders. *But said city
may assess the entire cost of such improvement or re-
improvement against the property owners and issue
bonds therefor as herein provided.* Said bonds shall be
divided into ten series, each series to be as nearly equal
as possible; said series to be paid respectively in one,
two, three, four, five, six, seven, eight, nine and ten years
after date," etc.  (Acts 1912 p. 380).

Acting under the authority of the amendment of 1912,
*supra,* appellant passed thirteen ordinances providing for
the improvement of certain streets in the city, section 5
of each ordinance reading as follows:

"Section 5.  That the cost of the construction of the
sidewalks, curbs and gutters provided for in this or-
dinance shall be paid by the owners of the property abut-
ting or fronting thereon, to be apportioned and assessed
against said property owners according to the number of
front feet abutting thereon; except, that in addition, the
cost of the sidewalks, curbs and gutters on the intersec-
tion of the various sections shall be pro rated among and
assessed against the property owners on each of the said
sections according to the frontage of their said prop-
erty."

The appellee, Connell, acting for himself and other
citizens of Henderson, who were alike interested in, and
would be affected by the proposed improvements, brought
this action for the purpose of restraining appellant from
collecting the cost thereof from the abutting property
holders, and from issuing any bonds by which the prop-
erty owners are to be held liable for the cost of said im-
provements.  The circuit court overruled a demurrer to
the petition; and the city of Henderson electing to stand

by its demurrer, the allegations of the petition were taken as true, and the injunction granted. The city appeals.

It is not contended by either side that the Act of 1912 repealed section 3456 of the Kentucky Statutes above quoted, which imposes upon the city the obligation of paying for the improvement of intersections. Appellant insists, however, that the provision of the Act of 1912 which declares that the city "may assess the entire cost of such improvement or reimprovement against the property owners, and issue bonds therefor," gives the city the choice of two methods of procedure: (1) It may pay for the improvement, or (2) it may require the property owners to pay for it. On the other hand, appellee insists that since section 3456 requires the city to pay for the intersections in all cases, the Act of 1912 merely provides two methods of procedure on the part of the city: (1) It may pay in cash, or (2) it may issue bonds therefor as in the Act provided. It will readily be seen that these two constructions of the statute are radically antagonistic. Under appellant's construction, the city can require the abutting property owner to pay the entire cost of the intersection, while under appellee's contention the city must pay it in all cases.

The Act of 1912 provides a new plan by which the payment of the cost of street, sidewalk and curb construction may be extended over a period of ten years on what is known as the tenyear plan. When the street has been completed and accepted, notice is published requiring the property owners to pay the assessments made against their property for their respective portions of the improvement; and if such assessments are not paid the city is authorized to borrow money to provide a fund for the payment of such portion of the entire cost of the improvement as the property holders shall be liable for, and to issue bonds therefor upon the faith and credit of the city. In this way the contractor gets his money at once, and the property owner is given ten years in which to pay his debt. After thus disposing of the liability of the property holder, the Act further provides that the city may, if it so desires, and has been authorized by law to pledge the faith and credit of the city in payment of its share of the cost of the improvement, issue bonds for the payment of its share in like manner as is provided in the Act for the issual of bonds in payment of the property holders' portion of the cost of the improvement. If the Act had stopped

there, there would be no doubt as to its meaning, since it is clearly apparent that up to that point the Act clearly gives the right, both to the property holder and to the city, of discharging their respective liabilities for the improvement, under the ten-year plan. But, if section 3456, which imposes upon the city the cost of the intersection improvement in all cases, is to stand unimpaired, then clearly the interpolated clause of the Act of 1912, which would give the city the right to assess the entire cost of the improvement against the abutting property holders and issue bonds therefor, cannot be given effect since the two Acts are diametrically opposed in their essential operations. The city cannot improve one street at the cost of the property owners, and another street at the cost of the city. The procedure must be uniform.

No rule of law is better settled than that repeals by implication are not favored by the courts, and that no statute will be construed as repealing a prior statute unless it be so clearly repugnant thereto as to admit of no other reasonable construction. Commonwealth v. Petri, 122 Ky., 26.

In Commonwealth v. International Harvester Co., 131 Ky., 561, it is said:

"If the Legislature has enacted two or more statutes which from their wording appear to be inconsistent, or if the statute under consideration appears to be in conflict with a provision of the Constitution, state or federal, there is an ambiguity, for it is always presumed that the Legislature did not intend to violate either Constitution; it is always presumed it intended its enactments to become valid and enforceable laws. Nor are repeals by implication favored, as it must be presumed that, if the Legislature had intended that one statute should repeal another, it would have so expressed it as to leave no doubt of its purpose. Hence when two statutes bearing on the same subject appear on their face to be so inconsistent with each other, the first duty of the court called upon to construe them is to harmonize them if possible so as to allow both to stand; or, if that cannot be done without violence to some part of the language employed in one or both the statutes, then the rule is to construe them so that both will stand so far as possible, and wherein any part of either is irreconcilable with any part of the other the latest stands, while the inconsistent part of the former is deemed to have been repealed."

Applying this rule to the seemingly inconsistent provisions of section 3456 of the Kentucky Statutes above quoted and the provisions of the Act of 1912, it is first to be noticed that the later Act is amendatory merely to Chapter 89 of the Kentucky Statutes, which constitutes the charter of cities of the third class. The Act contains no repealing clause, and evidently it was intended as a mere addition to, or a new provision for charters of cities of the third class. If the two statutes can be read together so that both may stand, it should be done.

Bearing in mind that the legislative intent is the rule by which we are to be guided, we think it reasonably clear that the two statutes can be read together so that both may stand.

As above pointed out, the Act of 1912 provided a new scheme by which the cost of street and other like improvements might be paid for on the ten-year plan. This was something new to charters of cities of the third class. It recognized the fact that under section 3456 the city paid the cost of the intersection, while the property holder paid the remainder of the cost, by first providing that the property holder might take advantage of the new plan in so far as it applied to his liability, and immediately thereafter that the city could, if it so desired, use the same method in the payment of its part of the cost by issuing bonds for its part of the cost thereof in like manner as is provided for the issual of bonds in payment of the cost of the improvement on behalf of the property holders. That provision is followed by the further provision that the city may assess the entire cost of such improvement or reimprovement against the property owners, and issue bonds therefor as therein provided. This last named provision is, however, not a separate and independent provision to be considered as standing by itself and granting a new power inconsistent with section 3456, *supra*. Such a construction would be meaningless. Evidently, it was intended to supplement the first provision of the amendment, which provides that the ten-year plan might be used in paying that portion of the property holder's liability which he had not paid in cash, by applying the ten-year plan to the entire liability of the property owner. Under this construction the city would have the option of applying the ten-year plan to the payment of such part of the property holder's liability as he has not paid in cash, or it might, at the outset, apply the ten-year plan to so much of the entire cost of the im-

provement as was chargeable against the property owners.

Clearly, this was the intention of the Legislature; otherwise we would have to say that it intended to let section 3456 of the charter remain unimpaired, requiring the city to pay the cost of street intersections, and at the same time nullify its operation by holding that the provision of the Act of 1912 gave the city the right to put that cost upon the property holder.

The circuit court gave the Act the construction above suggested, and held the bonds were valid, but that the city was without power to assess the cost of the intersections against the property holders, and that so much of the bonds as represented the cost of the intersections should be paid by the city.

We are of opinion that the conclusion there reached was sound in every particular.

Judgment affirmed.