## Keenon, et al. v. Adams, Superintendent, et al.

### Same v. Same.

### Same v. Same.

(Decided June 22, 1917.)

## Appeals from Mercer Circuit Court.

1. Schools and School Districts—Creation of Consolidated District.— Under sub-section 17, of section 4426a, Kentucky Statutes, and sub-section 8, of section 4399, Kentucky Statutes, the county board of education may by an order create a consolidated school out of contiguous districts, and pay for the transportation of pupils to and from their homes to the school out of the taxes levied by the fiscal court, under sub-section 9, of section 4426a, supra; or it may lay off a boundary for a consolidated district school, and provide for its expenses by local taxation, as authorized by sub-section 8 of section 4399, supra.

2. Statutes—Repeal.—Statutes are not repealed by implication, unless the provisions of the latter statute are so repugnant to the provisions of the former, that no other construction can be reasonably put upon it, except that it works a repeal of the former.

3. Schools and School Districts—Contract for Building or Repair of School House.—A county superintendent, members of the board of education, nor a sub-district trustee can have any financial interest in any contract for the building or repairing of school houses, the purchase of land for the school houses, the furnishing of supplies or equipment for the schools, or the employment of a teacher, but a contract with a sub-district trustee to haul pupils to and from their homes to a consolidated school does not fall within the inhibition of the statutes.

4. Schools and School Districts—Superintendent—Trustees.—The county superintendent and the members of the board of education are in the attitude of trustees of the school funds, and it is never lawful for a trustee to occupy a position, wherein his interests are adverse to those of the beneficiary.

5. Schools and School Districts—Contracts for Building or Repair of School Houses.—The superintendent, members of the board of education and sub-district trustees are forbidden to have a financial interest in any contract for the erection or repair of the school houses, or furnishing equipment or supplies to the schools, and it is unlawful to pay them for any such services rendered by them.

6. Schools and School Districts—Building or Repair of School Houses.—Although it is unlawful to contract with a sub-district trustee to erect or repair a school house, or to improve its grounds, or to purchase land for school purposes from him, or to furnish equipment or supplies for the school, or to pay such trustee for any of the things above mentioned; yet, if the payments were made in good faith, and for a purpose, which in itself was legal, and for a thing for which the school funds were raised and held, and the public got that which it was entitled to, the money can not be recovered back from the members of the board of education, and the public continue to enjoy the benefit of its expenditure.

R. W. KEENON and CHARLES T. CORN for appellant.

E. H. GAITHER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming in each case.

These three appeals, involving to some extent the same questions, have been heard and determined together. The appellant, as the county attorney of Mercer county, acting by virtue of an order of the fiscal court as well as in his own right as a citizen and taxpayer, is the appellant in each case, while Ora L. Adams, county superintendent of schools, and her bondsmen and the members of the board of education of the same county are the appellees.

1. In the first case, the Board of Education had, by an order, consolidated the common school in Riverview subdistrict with that of Ebeneezer subdistrict, and entered into a contract with a trustee of the first named subdistrict, as alleged, in the petition, to transport certain pupils to and from their homes, in the Riverview district, to the consolidated school, the school house, for which, is situated in the Ebeneezer district, and had, by an order of the Board of Education, paid to him a certain portion of the sum to be received by him, under the

contract, from the taxes levied and collected by the fiscal court of the county for the year 1915 for general educational purposes, by virtue of subsection 9, of section 4426a, Kentucky Statutes. The action was to recover from the superintendent and the other members of the Board of Education the sum paid under the contract, and to restrain the Board of Education from any further payment in discharge of the contract, and the subdistrict trustee from receiving any further payments of money upon the contract.

2. In the second case, the action is against the county superintendent of schools and her bondsmen, and the members of the Board of Education to recover from them various sums paid to members of the Board of Education and various subdistrict trustees, as alleged, under contracts for equipment and supplies for the common schools, and the sum of one hundred and eighty dollars, paid to William Bunton, a subdistrict trustee, for transporting pupils from Riverview subdistrict to the school house in Ebeneezer subdistrict, to a consolidated school, there established by an order of the Board of Education, and under a contract with such trustee to transport the pupils to and from their homes to such school, and the further sum of one hundred and ninety-three dollars and seventy-seven cents, paid for a wagon to be used in transporting the pupil children, in such consolidated school district, to and from their homes to the school. All of the payments were made by the superintendent under orders of the Board of Education, and out of the funds arising from the taxes levied and collected by a levy made by the fiscal court for educational purposes, under subsection 9, of section 4426a, *supra.*

3. The third action was against the county superintendent of schools and her bondsmen, and the members of the Board of Education to recover from them, certain sums of money, alleged to have been paid out to them by the superintendent, under orders of the Board of Education, to members of the board and to sub-district trustees, as alleged, under contracts for equipment and supplies for the common schools, and were paid out of the funds arising from the levy made by the fiscal court, under sub-section 9, of section 4426a, *supra,* for general educational purposes. The recovery of the further sums of one hundred and twenty-one dollars and

thirty-nine cents and three hundred and fifty dollars and four cents was sought against the superintendent and her bondsmen, because, as alleged, the superintendent had paid out such sums to a bank, as shown by a settlement, which she presented to the fiscal court, and for which payments no sufficient vouchers were filed with the settlement.

To the paragraphs of the petitions in the first and second cases, which sought a recovery for payments to a person, who was a sub-district trustee, for the transportation of pupils to and from their homes, in the Riverview sub-district, to the consolidated school, which was kept in the Ebeneezer district, and for a wagon to be used for that purpose, and to restrain the further payments in discharge of the contract to transport the pupils, and to the paragraph of the petition as amended in the third case, wherein a recovery was sought because of sums alleged to have been paid to a bank, when the settlement was not accompanied with a sufficient voucher, showing the reasons for such payments, the court sustained a general demurrer, but to the paragraphs of the petition as amended, in the second and third cases, wherein a recovery was sought for sums of money paid to the members of the Board of Education and to sub-district trustees, as alleged, under contracts for equipment and supplies for the common schools, the demurrers of the appellees were overruled, and an issue formed and proof being taken upon the issues made in reference to such payments, the court, upon a final hearing, dismissed the petitions, and from these judgments appeals have been taken, as well as from the judgment dismissing the petition, in the first case, upon the failure of the appellants to amend after the demurrer was sustained to it.

The first question for determination is the soundness of the judgment of the court in sustaining the general demurrer to the petition in the first case, and to certain paragraphs of the petition, as amended, in the second case, and to the last paragraph in the petition as amended in the first case. The determination of this question makes it necessary to determine, whether the Board of Education, may, by an order, consolidate contiguous sub-districts and thus create a consolidated school, and expend the funds from the taxes levied by the fiscal court for general educational purposes under sub-section 9, of section 4426a, *supra,* for transporting pupils to and from their homes to the consolidated school, and the pro-

viding of equipment for that purpose; and (2) if the Board of Education has such authority, may it lawfully contract with a sub-district common school trustee to transport the pupils?

The laws relating to common schools provide three methods for the creation of consolidated schools. One of the sections of the act of March 24, 1908, and which is now sub-section 17, of section 4426a, Kentucky Statutes, 1915, is as follows:

"The county board of any county shall have power to consolidate, with reference to the needs of either white or colored children, any two or more contiguous school sub-districts, and in case of such consolidation, school houses shall be built or acquired, located at some point convenient to the patrons of such consolidated school sub-districts, and of sufficient capacity to accommodate the pupil population of such consolidated school sub-districts, and such schools shall be called and known as consolidated schools. Teachers for such consolidated schools shall be employed in the same manner as teachers for school sub-districts."

In 1912 the following act was adopted, which is sub-section 8, of section 4399, Kentucky Statutes, 1915:

"That the county board of education is hereby empowered to lay off a boundary, including a number of sub-districts, and submit to the voters in that boundary the proposition of a tax sufficient to provide for consolidation of the schools within that boundary and for transportation of pupils to and from said consolidated school, and may provide in districts consolidated under existing laws, by local taxation or otherwise, for the transportation of pupils of the district to and from the schools, and such appropriation and taxation for said purposes of transporting children is hereby validated, as if it had been previously expressed in the phrase for local taxation, and that where sub-districts have already been consolidated according to law, and a tax has already been voted in said consolidated districts for local expenses, the term 'local expenses' shall be construed to include the transportation of children in such cases. Said proposition for taxation may be submitted to the voters at the regular election for school trustees or at any other time decided upon by the county board of education, provided that not less than thirty days' notice be given of said election."

Another method is provided by section 4500b, Kentucky Statutes, for creating a consolidated school, but this applies when one of the districts is a graded common school district, and has no application to the question, in issue, here.

It will be observed, that by the terms of the first statute quoted, the Board of Education is expressly authorized, with reference to the needs of pupil children, to consolidate two or more contiguous sub-districts into a consolidated school. This can be accomplished by the Board of Education making an order to that effect. This statute must be still in force, unless it has been repealed by the second one quoted. The second statute, quoted, provides for the creation of a consolidated school or district by the Board of Education, by an order laying off a boundary, which may include several districts, and submitting to the voters within the boundary the proposition of a tax sufficient to provide for consolidation of the schools within the boundary and the transportation of pupils to and from the schools, and if the tax is approved by a majority of the voters, it results in the establishment of the consolidated school. There is no repugnancy in the provisions of the two statutes. They each provide for creating a consolidated school, but in a different manner, and the reason for the adoption of the second quoted statute must be sought in the purpose of the legislature to provide for the consolidated school and its support by local taxation, where the necessary cost of it would be such, that, it would not be wise or practicable to give it support otherwise, and to provide for the varying necessities in different communities and localities. It is, also, to be presumed, that when the legislature intends that one statute shall repeal another, it will have given such expression, as to leave no doubt of its intention, and hence repeals by implication are not favored, and a statute will not be held to repeal another by implication, unless the provisions of the latter statute are so repugnant to the former, that no other construction can be reasonably placed upon it, except that its provisions work a repeal of the former statute. When two statutes, with reference to the same subject, appear to be inconsistent with each other, the court will harmonize them, if it can, so that both may be allowed to stand and remain in force, and if that cannot be done without violence to the language expressed in them, then the court will construe them, so that each of the statutes shall stand as far as possible, and wherein any part of either

is irreconcilable with any part of the other, the latest stands and the inconsistent part of the former stands repealed. Com. v. International Harvester Co., 131 Ky. 561; Com. v. Petri, 122 Ky. 26; City of Henderson v. Connell, 156 Ky. 730; Cope v. Cope, 137 U. S. 686; McCord v. L. & N. R. R. Co., 183 U. S. 483. Applying the above stated well-established principles, it is very clear that sub-section 17, of section 4426a, *supra,* was not repealed by sub-section 8, of section 4399, *supra.* The legislature recognized the validity of sub-section 17, of section 4426a, *supra,* when it enacted the latter statute, as, after making provisions for the expense necessary in creating and maintaining a consolidated school by local taxation, imposed by a vote of the qualified voters, it empowered the Board of Education, where districts have been consolidated under existing laws, to provide by local taxation "or otherwise" "for the transportation of pupils of the district to and from the schools." Sub-section 7, of section 4399, *supra,* empowers the Board of Education to "place in one common school fund, the state fund received from the state treasury, as is now provided by law, and the fund raised in the county by taxes levied, and distribute said common school fund in the county for the purpose of erecting and equipping school buildings, and in the payment of teachers and such other expenses as are necessary in making an efficient system of schools in the county, etc." These various enactments construed together seem to fully authorize the Board of Education to create a consolidated school out of the contiguous districts without submission of the question of local taxation to the voters of the boundary laid off for the district, and has fully empowered the Board of Education to provide the necessary transportation of the pupils to and from the school out of the taxes levied and collected, under sub-section 9, of section 4426a, *supra.*

With relation to the employment of a person holding the office of trustee of a sub-district to transport the pupils to and from the school in a consolidated district, the following statutes are appealed to: Sub-section 1, of section 4440a, and the latter part of sub-section 17, of section 4426a, *supra.* The first section referred to provides:

"That no county superintendent, board of education or member thereof, or trustee of any sub-district shall directly or indirectly become interested in any contract for building or repairing school houses in his or their district: . . ."

The latter clause of sub-section 17, of section 4426a, *supra*, is as follows:

"No trustee nor member of the Board of Education nor County School Superintendent shall be financially interested, directly or indirectly, in any contract for the purchase of land, the erection or repairs of any school house, the furnishing of supplies or equipment or the employment of any teacher, and any of said officers so offending shall be guilty of an indictable misdemeanor, etc. . . ."

Neither of these sections seems to prohibit or embrace the entering into a contract by the Board of Education with a person holding the office of a sub-district trustee for the transportation of pupils to and from the schools in a consolidated district. A sub-district trustee is prohibited from being financially interested in a contract to buy land for the school or for the erection or repair of the school house or for equipment or supplies for the school, but the legislature has not seen proper to make unlawful by such trustee the receipt of compensation for transporting pupils to a consolidated school, and is not unlawful, if the arrangement is unmixed with graft or corruption. The sub-district trustee is not authorized to make a contract on behalf of the Board of Education for the transportation of pupils and is not in control of any part of the school funds, and hence does not occupy the position of a trustee, who cannot employ himself lawfully to execute the duties of a trust, and his interests thus cóme in conflict with those of the beneficiary of the trust. Hence, there would be no reason for holding a contract with him to transport pupils to be unlawful, unless such contract is prohibited by the statute, which it is not. These conclusions dispose of the questions raised, in the appeal from the judgment, in the first stated cause, and the judgment in that case is therefore affirmed. The judgment of the court sustaining a demurrer to the paragraphs of the petition, as amended, in the second above stated cause, wherein the employment of one William Bunton and payment to him for transporting pupils to the consolidated school and the purchase of a wagon for transporting the pupils, complained of, is, for the reasons above stated, concurred in, as there are no averments, that, the service was not necessary or that the Board of Education abused its discretion, in the sums paid for the service. Neither is it averred or claimed that the wagon was unnecessary.

b.   The paragraph in the petition, as amended, in the third above styled cause, in which it was complained, that the settlement of the superintendent of schools showed a credit of one hundred and twenty-one dollars and thirty-nine cents and another of three hundred and fifty dollars and four cents as paid to a bank, and not accompanied with such vouchers as justified the superintendent in receiving such credits.   Truly, no vouchers in regard to such items accompanied the report or settlement, beyond the checks through which the sums were paid.   Section 4409, Kentucky Statutes, requires the superintendent, in his settlement made on or before the first day of August, of each year, with the county judge, to show "a full statement of all such sums paid out by him, for what, to whom, and when paid."   The settlements on file with the petition do not show that either of the items complained of were actual payments made out of the school fund to any one, but the settlement shows that the superintendent was charged with the same sums as paid by the bank to her, and in reality both the items of debit and credit, with reference to such alleged payments to the bank, were entirely unnecessary, besides, the settlement on file is not one, which, under the statute, must show the sums paid out, for what, and to whom and when paid.   The statute that requires a settlement to be accompanied with such vouchers is the one, which, according to section 4409, *supra,* must be made with the judge of the county court.   The matter here termed a settlement is the report, which the fiscal court may require of the school superintendent, of his receipts and disbursements of public funds, and to be made at such time, once, in each year, as the fiscal court may require, as provided by sub-section 12, of section 4426a, *supra.*   It does not appear that the fiscal court required any further information of the superintendent than that contained in the report filed with the petition, with reference to any payments to the bank of the items complained of, and there is no averment in the petition that the payments to the bank of the items were not properly made, or that there was anything illegal or wrong in such payments, and hence the demurrer was properly sustained to that paragraph of the petition as amended, in the third above stated cause.

3.   The sums, the recovery of which are sought in certain paragraphs of the petitions as amended, other than those heretofore considered, in the second and third above styled causes, appear from the facts to be com-

posed of two classes. One class is composed of sums ordered by the Board of .Education to be paid and were paid by the superintendent to members of the board and trustees of sub-districts for sums of money advanced by them for the board to persons, who sold equipment and supplies to the schools and made repairs upon the school houses and grounds, under such circumstances as the following:

The member of the board of trustees of a sub-district would, under the direction of the board, employ some individual to make necessary repairs upon the school buildings or lands, or would buy supplies for the schools, and as the person doing the work or furnishing the supplies would request payment in cash and the board would be without funds, the member of the board of trustees, who was directed to cause the work to be done or to purchase the supplies, would, out of his own means, advance and pay to the person doing the work or furnishing the supplies the contract price, and thereafter the Board of Education would, upon the presentation of the claim, repay the member of the board or trustee the exact sum, which he had advanced for the board, in order to get the work done or the supplies furnished. It is very clear, that such a transaction as this could not and is not a contract between the board and one of its members or a sub-district trustee, for the building or repairing of a school house, or for the furnishing of equipment or supplies to the school, and could not come within the inhibition of sub-section 1, of section 4440a, *supra,* which declares, that neither the superintendent nor any member of the Board of Education nor any trustee of a sub-district shall become interested in any contract for the building or repairing of. school houses within his or their district, because such a transaction does not invest any of the officers mentioned with a financial interest in a contract adverse to the interest of the district. He does not make anything out of the transaction, nor does he have any opportunity, nor does the transaction, as above stated, constitute a contract between him and the school board for the doing of anything prohibited by the statute. He has merely advanced the money for the Board of Education, and without any contract for the repayment of it to him. Sub-section 17, of section 4426a, *supra,* makes it unlawful for the superintendent or any member of the Board of Education or any sub-district trustee to be financially interested in any contract for the purchase of land, the erection or repairs of any school house, the fur-

nishing of the supplies or equipment, or the employment of any teacher. The other class of payments to the members of the Board of Education and to trustees of sub-districts were payments made to such officers for supplies and equipment sold by them to the schools, or for work done by them in repairing the school houses, or improving the school grounds, or in hauling with their own teams supplies for the school and charging for the use of such teams and their own services in so doing. Such transactions as these are clearly unlawful and within the inhibition of the statute, as an officer who makes such sale in his own right to the district or performs services for the district in the way of repairs to the school buildings, or the improvement of the school grounds or in hauling supplies to the school, under an arrangement or expectation of receiving compensation for the use of his team and his services, has a financial interest in the transaction. The county superintendent and the members of the Board of Education, besides being prohibited by statute from making contracts of this character with the Board of Education, stand in the attitude of trustees of the school funds, for the use and benefit of the common schools, and it is never lawful for a trustee to occupy a position wherein his interests are adverse to those of the beneficiaries of the trust. The sub-district trustee, while not a custodian of the school funds, nor has any control of their distribution, he is expressly prohibited by statute from making such contracts with the school board or with the districts, and it is unlawful to pay him for such services out of the school funds. The provisions of these statutes may oftentimes work inconvenience and possibly add additional expense to the conducting of the public school system, but they were designed to prevent those, who have power to contract for the common schools, or who stand in a relation to them, which will enable them to receive financial benefits by contracting with themselves to perform services, and to sell supplies, or to build or repair school houses. They were designed to utterly prevent either the trustees of the sub-districts or the members of the Board of Education from having any interest adverse to the interest of the schools, and to prevent any character of graft or corruption in the distribution of the school fund, which is levied and collected for the education of all the children of the Commonwealth.

Of the expenditures of the second above mentioned class, the proof shows that in the third above styled

cause the unlawful payments amount to the sum of nearly fifty dollars to seven different sub-district trustees, and in the second above styled cause an unlawful expenditure of two dollars. These expenditures, without enumeration, were all for things, which were authorized by law, and the amounts paid were not in excess of what the services were fairly worth, and the funds expended, in each instance, were applied to the purposes for which the fund was raised and held. The things, for which they were paid, were not illegal nor unauthorized, and no criticism could be made of the payments, nor the contracts under which they were made, if made upon contracts, to persons, other than sub-district trustees. The vice of the matter consists in the persons to whom the expenditures were made, for the performance of services, which the law prohibits a trustee to charge or receive compensation for from the school fund. If the Board of Education had refused to make the payments, as it should have done, it could not have been compelled to do so, and it could have been restrained from doing so, at the suit of any citizen, and the payments would not excuse the recipient from the penal consequences of the violation of the statute. In Flowers v. Logan County, 138 Ky. 59, the following doctrine was announced:

"If the thing done had been illegal or not warranted by law, however beneficial it might have been, the public ought not to be estopped to deny the validity of the expenditure; or where the thing is authorized, but it is proposed to do it in an unauthorized manner, upon seasonable complaint, those charged with doing the thing will be compelled to execute it as the law directs, and prohibited from doing it otherwise. But, where the thing is authorized to be done and is done by the party charged with doing it, but done in a manner contrary to that directed by the statute, the court will not compel the official to pay back the money and let the public continue to enjoy the benefits of its expenditure. If it is made to appear that the expenditure was in good faith, and the public has got that which it was entitled to, good conscience forbids the recovery. The law therefore denies it."

Under the above authority, a recovery cannot be had for the described expenditures against the superintendent nor the members of the Board of Education, if the payments were made in good faith, and the public got that which it was entitled to, and the purpose for which the expenditure was made was for a thing, which was lawful to be done, and a thing for which the funds were raised

and held.  The evidence seems to warrant these conclusions.

The judgments, in the second and third causes, are therefore affirmed, as well as the judgment in the first-mentioned cause.