STATE ex rel. WOODWARD, Relator, v. MOULTON et al.,
County Commissioners, Respondents.

(No. 4,567.)

(Submitted March 1, 1920.    Decided March 22, 1920.)

[189 Pac. 59.]

*Mandamus—New Counties Act—Constitution—Exclusion Petitions—Insufficiency—Constitutional Law—Unequal Taxation.—Statutes—Legislative Proceedings—Extent of Review.*

*Mandamus*—New Counties—Board of County Commissioners—Availability of Writ.
1.   *Mandamus* lies to compel the board of commissioners of a county from which the greater portion of a proposed new county is intended to be taken to reconvene and take jurisdiction of the proceeding, where its refusal to proceed was based upon an erroneous decision of purely preliminary questions of law.

New Counties—"Taxpayer"—Definition.
2.   A "taxpayer" within the meaning of section 2 of the New Counties Act (Chap. 226, Laws of 1919) which requires petitions for the creation of a new county to be verified by five resident taxpayers, is one who owns property within the county and who pays, or is subject to and liable for, a tax.

Same—Taxpayer—Failure to Place Name on Tax-roll—Effect.
3.   Where the owner of personalty listed it and paid taxes thereon, failure of the assessor to place his name on the tax-roll, or the fact that the property was mistakenly assessed in the name of a newspaper of which he was the owner, did not have the effect of disqualifying him as a "taxpayer" as above defined.

Same—Exclusion Petition—"Block"—Insufficiency.
4.   *Held,* that the requirement of Chapter 226, Laws of 1919, that territory sought to be excluded from a proposed new county must be in one block—the word "block" implying solidity or compactness—was not met by a petition describing an irregularly shaped tract distributed over fourteen townships, the exterior boundaries of which ran back and forth, in all directions of the compass, alternately including and excluding small tracts, so threaded together as to preserve its continuity, and including those against the creation of the new county and excluding those favoring it.

Same—Exclusion Petition—Majority Rule.
5.   The intent of the legislature in enacting the provision that territory sought to be excluded from a proposed new county must be in one block, *held* to have been that a block should be mapped out, irrespective of the personnel of those residing within it, the majority of the residents thereof to determine whether, as a whole and not as individuals, they go with the new or remain in the old county.

Same—Defective Exclusion Petition.
6.   Where the territory described in an exclusion petition filed in a proceeding to create a new county left certain tracts in the proposed new county contiguous to the remainder of the old county, but entirely

surrounded by exclusion territory and segregated from the remainder of the new county, such tract should have been included in the exclusion petition.

Same—Expense of Preliminary Proceeding—Constitution—Unequal Tax Burdens.

7. Failure to make provision for reimbursement of the county from which the greater area for a proposed new county is taken for the expense incident to the creation of the new county, *held* not to render Chapter 226, Laws of 1919, violative of section 11 of Article XII of the Constitution, as casting an unequal burden of taxation upon the old county.

Statutes—Irregularity in Legislative Proceedings—Extent of Review of Journals.

8. Under the rule that where the constitutionality of an Act is questioned on the ground of irregularity in its passage, the only purpose for which courts may go behind the enrolled bill is to ascertain whether the aye and no vote was entered in the journals of the legislative assembly, it is not permissible to determine whether an amendment to a bill made by a joint conference committee was considered by either house before passage upon third reading.

Original application for *mandamus* by the State, on the relation of Herbert S. Woodward, against B. F. Moulton and others, as members of the Board of County Commissioners of Fergus County. Writ granted.

*Mr. O. W. McConnell, Mr. John J. Jewell* and *Mr. Earl Wineman,* for Relator, submitted a brief; *Mr. McConnell* argued the cause orally.

*Messrs. Belden & De Kalb* and *Mr. Ralph J. Anderson,* for Respondents, submitted a brief; *Mr. H. L. De Kalb* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On the twenty-fifth day of November, 1919, relator, with 584 other persons, filed with the respondent board two petitions, one from Cascade county and one from Fergus county, for the creation of a new county to be known as Judith Basin county. These petitions contained a statement of all facts required by law and necessary to confer jurisdiction upon the board to act; thereupon a day was fixed for the hearing of the petitions, and notice given and proof made of the publication as required by

law, and a cash bond in the sum of $5,000 was furnished. Thereafter, and within the time allowed by law, certain petitions were filed with the board for the exclusion of territory within the boundaries of the proposed county, and other petitions for the inclusion of certain other territory.

On the day of the hearing, protestants against the creation of the proposed county challenged the sufficiency of the verification of the Cascade county petition, on the ground that one of the signers, H. S. Thurston, was not a taxpayer. This matter was argued, testimony taken thereon, and taken under advisement by the board. The board heard the evidence as to the sufficiency of the petition from Fergus county and of the exclusion petitions Nos. 1 and 3, and thereafter determined that H. S. Thurston was not a taxpayer, and therefore the petition from Cascade county was insufficient, and rejected the same. The board then found that the territory described in exclusion petitions Nos. 1 and 3 was each in one block, and contiguous to Fergus county, that the petitions were sufficient, and excluded the territory so described, and found that inclusion petition No. 1 was insufficient, and that inclusion petition No. 2 was filed on the day of the hearing, and therefore came too late, and rejected both of said petitions for the inclusion of territory. Thereupon the board found that, with the exclusion of the territory described in exclusion petitions Nos. 1 and 3, the remainder of the proposed county would not be reasonably compact, and the petition for the creation of the county was therefore denied.

The board further found that all petitions filed constitute one attempt to create a county, and that, upon the failure of one of the petitions to comply with the law—that is, the Cascade county petition—the board was without authority to proceed, and also that, the Cascade county petition having failed, the remaining territory in the petition for the creation of the new county contained less than ten hundred square miles, excluding the territory withdrawn by reason of exclusion petitions Nos. 1 and 3.

Relator thereupon filed his petition for a writ of mandate to compel the respondent board to reconvene and annul their order

holding that the Cascade petition was not properly verified, and to annul their order finding exclusion petitions Nos. 1 and 3 sufficient, and their order that the proposed new county did not contain the required area, and to make findings of all facts required by law to be determined, and give notice and order an election for the creation of Judith Basin county. An alternative writ was issued, and the board made return thereto, and also filed a motion to quash.

1. In support of the last-named motion, it is urged that the [1]   board, having acted in a *quasi*-judicial capacity, and having exercised their discretion, the writ of mandate does not lie. This question has long since been determined adversely to the contention of respondents. "The rule that *mandamus* will not issue to control discretion or to revise judicial action, but only to direct the court to act in such matter, is to be understood as applying only to the act to be commanded by the writ, and not to the decision of purely preliminary questions of law only." (*Raleigh* v. *District Court,* 24 Mont. 306, 81 Am. St. Rep. 431, 61 Pac. 991; *State ex rel. Stringfellow* v. *Board of County Commrs.,* 42 Mont. 62, 111 Pac. 144; *State ex rel. Arthurs* v. *Board of County Commrs.,* 44 Mont. 51, 118 Pac. 804; *State ex rel. Lang* v. *Board of County Commrs.,* 48 Mont. 28, 134 Pac. 297.)

2. The Act providing for the creation of new counties requires [2, 3]   that "There shall be attached and filed with said petition or petitions an affidavit of five qualified electors and taxpayers residing within each county sought to be divided," *etc.* (Sess. Laws 1919, p. 561, sec. 2.)

The petition from Cascade county was rejected by the board of county commissioners of Fergus county, on the ground that one H. S. Thurston was not a taxpayer. The evidence discloses that Thurston did not appear on the tax-rolls of Cascade county for the year 1919. It does appear, however, that Thurston listed with the assessor, watches, jewelry, *etc.,* of the value of $100, household goods and furniture of the value of $500, and manufacturing and mining machinery of the value of $1,800,

and, in the blank affidavit attached to the assessment list, the name of H. S. Thurston appears, although the assessor entered on the flat leaf or cover of the list, the name "Geyser Times." Thurston testified that he was the owner of the property described, and signed his name to the list on demand of the deputy assessor, as making oath thereto, and that the name of "Geyser Times" did not appear on the list at the time. He further testified that he paid the taxes by his personal checks; that he is a resident of Cascade county, and voted at the last general election; that he is the owner of the "Geyser Judith Basin Times," and that there is no incorporated company.

It will be noted that the section of the Act above referred to does not require that the affiant shall be a taxpayer "whose name appears on the last assessment-roll of the county," as is the case in many such statutory provisions, but merely that he is a "taxpayer." " 'A taxpayer' is one who owns property within the municipality, and who pays a tax, or is subject to and liable for a tax." (*City of Pocatello* v. *Murray,* 23 Idaho, 447, Ann. Cas. 1914C, 1050, 130 Pac. 383; *Lasityr* v. *City of Olympia,* 61 Wash. 651, 112 Pac. 752; *State ex rel. Sutton* v. *Fasse* (Mo. App.), 71 S. W. 745.) In the *Pocatello Case* the court said that, as the statute did not require the name of the taxpayer to appear on the assessment-roll, the ownership of the property and the payment of taxes thereon were sufficient to qualify such owners of property as taxpayers. We think this is the correct rule, and that it is abundantly supported by the authorities. Thus in *State* v. *Lowe,* 56 Kan. 594, 44 Pac. 20, it was held that "The failure of an assessor to enter the name of a taxpayer on the rolls, when it was his duty to have done so, does not disqualify him as a juror."

"The fact that the property is assessed in the name of another by mistake does not disqualify a person as a juror if he is the owner of the property and pays taxes thereon." (*United States* v. *Hackett* (C. C.), 29 Fed. 848.)

And in the case of *Mayer* v. *Sweeney,* 22 Mont. 103, 55 Pac. 913, it was held that "Under Political Code, section 4749, which

requires the mayor  *   *   *  to be a 'taxpaying freeholder,'
a person who, at the time of his election, owned and paid taxes
on personalty, and owned realty on which he was not liable for
taxes for that year, because acquired since the date of assess-
ment, is eligible.''

It is clear that Thurston was a qualified elector and tax-
payer, and that the petition from Cascade county was therefore
sufficient in this respect. It is not necessary to pass upon the
question as to whether the petition could be amended by a fur-
ther verification before final hearing.

3. The next error assigned is that the board of county commis-
sioners found that the petition for Judith Basin county was not
sufficient, for the reason that, after certain withdrawals, it con-
tained less than twelve hundred square miles. The board was evi-
dently laboring under a misapprehension of the provisions of the
Act. Section 1 provides that the creation of a new county must
not reduce the original county to less than twelve hundred square
miles in area, but the new county need not contain more than
ten hundred square miles. This error was, at some time before
the hearing, corrected in the original findings by striking out the
word ''twelve'' and substituting the word ''ten.''

4. With reference to exclusion petitions, the Act (section 2),
[4]    provides that: ''All such territory being excluded must be
in one block, and contain an area of not less than thirty-six
square miles, and be totally within one.county, and contiguous
thereto.  *   *   *   ''

In exclusion petition No. 1, the description of the lands to be
excluded covers ten and one-half pages of typewritten matter,
single spaced, comprising an area of 143 1/32 square miles, dis-
tributed over fourteen townships and with an exterior boundary
line of 305 miles. In length it is thirty-one miles and is
twenty-one miles wide. The exterior boundary line runs back
and forth, north, east, south, west, alternately, including and ex-.
cluding small tracts of land. In places the excluded land is,
for a mile or more, not to exceed a quarter of a mile in width.
A conception of the condition existing can only be acquired by

reference to the map introduced in evidence, a copy of which is made a part of this opinion.

This remarkable collection of tracts of land, threaded together to preserve its continuity, was declared by the respondent board to be "in one block." The word "block" is defined to be: "A section or division; the objects collectively contained in a section; a mass or row, as a block of land; the land and buildings contained in a single square; a government division of land." (Standard Dictionary.) "A lump or mass; any solid mass or matter * * * a connected mass of buildings." (Century Dictionary.) "A solid mass of wood or stone, usually with one or more plain surfaces; a square; a portion of a city inclosed by streets." (Webster's Dictionary.) Throughout all

the definitions of the word runs the one thought of solidity or compactness.

Prior to the passage of the present law, there was no requirement that excluded territory should be "in one block," and it is quite evident that the legislature, by inserting the clause in the present law, intended to place an additional restriction upon those desiring to exclude territory from a proposed county, by providing that those desiring to withdraw shall carve from the proposed new county not less than thirty-six square miles in some regular and compact form and contiguous to the remaining portion of the original county, and then ascertain whether a majority of those residing in such "block" of land were favorable to the exclusion, to the end that, after the exclusion, county lines could be run between the original and the new counties in a practicable and workable manner. It is, of course, conceivable that such "block" of territory might be so extensive as to entirely divide, or at least emasculate, the proposed county; and the legislature, therefore, further provided that the board shall determine whether the area left in the proposed county will be reasonably compact.

But it was clearly not intended that, with regard only to continuity, running the lines so as to include those against the creation of the county and carefully excluding all in its favor, [5] territory could be excluded. If such had been the intention, there was no occasion for the provision that such a petition should contain the signatures of a majority of those residing within the territory sought to have excluded. This is a government by majority rule, and it was intended that a whole block or tract be mapped out irrespective of the personnel of those residing within it, and thereupon the majority of such residents should determine whether they, as a whole, go with the new or remain in the original county. Counsel urge the right of "self-determination," but self-determination in this respect means nothing more than the right of the majority to determine—not determination by each individual.

While exclusion petition No. 3 described territory with [6] irregular boundary lines, it is less objectionable than is No. 1; but here certain tracts, contiguous to the remainder of the county of Fergus, are left entirely surrounded by exclusion territory, and, if the exclusion petition is granted, in the anomalous position of being a part of the new county, yet entirely segregated therefrom. To have been effective, this exclusion petition should have taken in all such tracts, so that both the exclusion petition and the new county petition could have been effective.

5. The respondents have set up in their answer, and urge as [7] grounds for their motion to quash the alternative writ the contention that the New County Act (Chap. 226, Laws of 1919) is unconstitutional and void, in that it violates section 11 of Article XII of the state Constitution, which provides: ''Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax''—the contention being that, as the hearing on the petition shall be had before the board of county commissioners in the county from which the greater area is taken, and no provision is made for the reimbursement of such county, either from the new county when created, or *pro rata* from the other counties from which territory is taken, a burden is cast upon the taxpayers of such county in violation of the above-quoted article of the Constitution.

While the requirement that the one county shall be charged with the entire expense of the hearing on the petition may be an injustice to that county and the other counties from which territory is carved should pay their proportionate shares of such expense, as a matter of justice between the counties, such provision does not come within the prohibition of the article referred to. Article XII of the Constitution has to do only with the levying and collection of taxes to maintain the state and county governments, and has no relation to the expenditure of the moneys so raised. The funds from which these expenses shall

be paid are raised by a uniform levy upon the same class of subjects within Fergus county, including the property proposed to be taken into the new county of Judith Basin. The fact that all the property in Cascade county will escape taxation for this purpose does not destroy the uniformity of the taxation in Fergus county. An analogous situation is the levy of a uniform tax for road and bridge purposes on all property in the county, and the expenditure of a large sum in one section of the county, while all sections have contributed their proportionate share to the fund. The building of an expensive piece of road, or the erection of a costly bridge in one end of the county, may be of no benefit whatever to property in the opposite end of the county, and yet there is no violation of the uniform taxation rule laid down. This is an entirely different proposition from that dealt with in the case of *Hamilton* v. *Board of County Commrs.*, 54 Mont. 301, 169 Pac. 729.

As to defraying the expense of the election, excepted to by respondents, the Act provides for an apportionment between the old counties; here the use of the funds is for a public purpose, and the property in the new county, if created, has stood its proportionate share of the taxes from which the fund is derived, and will be charged with its proportionate share of the debt of each of the counties from which it is carved.

6. Respondents contend that the Act under consideration is [8] void and of no force and effect, for the reason that, while it was being considered as Senate Bill No. 6, it contained the provision, "Nor shall any line thereof pass within eighteen miles of the courthouse, * * * " which provision was changed by the joint conference committee to read "fifteen" instead of "eighteen" miles, and that the committee was without authority to make the amendment, or, if acting within its authority, the amendment was not considered by either house before its passage upon third reading of the bill. We are asked to go behind the enrolled bill as approved, and determine the regularity or irregularity of the proceedings of the legislature from the senate and house journals.

The question of the authority of the court to proceed in the manner suggested in determining the constitutionality of an Act of the legislature has been three times before this court:

In the case of *State ex rel. Bray* v. *Long*, 21 Mont. 26, 52 Pac. 645, it was contended that a certain bill was not passed by the legislative assembly in the manner prescribed by the Constitution; the journal omitted to show that the bill in question was signed by the presiding officer of each house, pursuant to the provisions of section 27, Article V, of the Constitution. The court, in refusing to go behind the enrolled bill, said: ''The presumption is that the legislature and the officers thereof did their duty, and that the enrolled bill was regularly passed. This presumption is strong, and is indulged in by the judicial branch of the government as necessary to the 'peace and good order of the state.' * * * ''

Quoting from *Railroad Co.* v. *Governor*, 23 Mo. 353, 66 Am. Dec. 673, the court continues: ''If the legislature exceeds its power in the enactment of a law, the courts being sworn to support the Constitution, must judge that law by the standard of the Constitution, and declare its validity. But the question whether a law on its face violates the Constitution is very different from that growing out of the noncompliance with the forms required to be observed in its enactment. In the one case a power is exercised not delegated, or which is prohibited. * * * In the other, the law is not in its terms contrary to the Constitution; on its face it is regular, but resort is had to something behind the law itself in order to ascertain whether the General Assembly, in making the law, was governed by the rules prescribed for its action by the Constitution. This would seem like an inquisition into the conduct of the members of the General Assembly, and it must be seen at once that it is a very delicate power, the frequent exercise of which must lead to endless confusion in the administration of the law.''

The next case to consider this question is that of *Palatine Ins. Co.* v. *Northern Pacific Ry. Co.*, 34 Mont. 268, 9 Ann. Cas. 579, 85 Pac. 1032, and the latest case that of *State ex rel. Gregg*

v. *Erickson,* 39 Mont. 280, 102 Pac. 336.  In the later case Mr.
Justice Holloway reviewed at length the authorities on the ques-
tion and laid down the following rules: "In the case of *Marshall
Field & Co.* v. *Clark,* 143 U. S. 649, 36 L. Ed. 294, 12 Sup. Ct.
Rep. 495, [see, also, Rose's U. S. Notes],  *  *  *  the court
held to the strict English rule, and said: 'We are of opinion,
for the reasons stated, that it is not competent for the appellants
to show, from the journals of either house, from the reports of
committees, or from other documents printed by authority of
Congress, that the enrolled bill designated "H. R. 9416," as
finally passed, contained a section that does not appear in the
enrolled Act in the custody of the state department.'  *  *  *
In *Palatine Ins. Co.* v. *Northern Pacific Ry. Co.,*  *  *  *  this
court departed from the rule theretofore announced in *State
ex rel. Bray* v. *Long,*  *  *  *  and held that the courts might
consult the legislative journals to determine whether, upon the
final passage of a bill in either house, the names of those voting
had been entered on the journal.  We felt constrained to go to
that extent because of the language of section 24, Article V, of
our Constitution, which provides: 'No bill shall become a law
*  *  *  unless on its final passage the vote be taken by ayes
and noes, and the names of those voting be entered on the jour-
nal.'  Section 12, Article V, of our Constitution requires that
each house shall keep a journal of its proceedings; but, except
in these instances where the Constitution requires a specific
entry to be made in the journals, the question what entries shall
be made, or how full or minute the entries made shall be, are
questions addressed to the legislative discretion.  (*State* v. *City
of Hastings,* 24 Minn. 82.)

"There are but two instances mentioned in our Constitution
wherein the legislature is required to make any particular
entries in the journals.  The first is found in section 24 above,
and the other in section 27 of the same Article, where the fact
of the signing of a bill by the presiding officer is required to
be entered upon the journal.  But for the failure of this second
entry to be made, there is not any declaration that any conse-

quences would follow; whereas, there is the specific declaration made in section 24 that, if the names of those voting upon the final passage of a measure be not entered in the journal, the bill shall not become a law. But for the obligatory character of this language, this court, in the *Palatine Case* above, would have followed the rule theretofore announced in *State ex rel. Bray* v. *Long.*" The court concludes with the declaration: "We deem the argument advanced in *Marshall Field & Co.* v. *Clark,* above, in favor of the English rule, conclusive upon this subject, excepting in so far as that rule is modified or added to by the provisions of section 24 of our Constitution above."

It is therefore apparent that, when the constitutionality of an Act is questioned on the ground of irregularity of legislative action, the only purpose for which the courts may examine the journals of that body is to determine whether the ayes and noes vote was entered.

The writ should issue to the members of the respondent board of county commissioners of Fergus county, directing them to reconvene within fifteen days after service of the writ and annul their order made on the fourteenth day of January, 1920, denying the petition herein; declaring affiant Thurston not a taxpayer, and that the Cascade county petition is insufficient, and annul their finding and order that exclusion petitions Nos. 1 and 3 are sufficient and excluding the territory therein described, and to thereupon, by proper order, reject said exclusion petitions Nos. 1 and 3 as insufficient in law, and find that the said Cascade petition was properly verified, as a matter of law, and that they do proceed to hear and determine, and make such further findings and pass such resolutions and make such orders as are required of them by law; and it is so ordered.

*Writ forthwith.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.