STATE EX REL. LIEN, APPELLANT, *v.* SCHOOL DISTRICT
No. 73 OF STILLWATER COUNTY ET AL., RESPONDENTS.

(No. 7,777.)

(Submitted February 1, 1938. Decided February 15, 1938.)

[76 Pac. (2d) 330.]

224

*Mr. M. L. Parcells,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. P. R. Heily,* for Respondent, submitted a brief; *Mr. Mark H. Derr,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Relatrix by this proceeding sought a peremptory writ of mandate against the defendants in their official capacities as the trustees of school district No. 73 in Stillwater county, requiring them to furnish and pay for transportation from her home to the public school at Absarokee, or for the board, rent, and tuition while her two children were attending school there. An alternative writ was issued to which the defendants filed a motion to quash, which was sustained by the trial court. A judgment of dismissal was entered, from which this appeal was perfected.

Relatrix is the mother of two children, a girl aged twelve years, and a boy nine years old, all of whom, together with her husband, the father of these children, reside on a farm. The family is dependent upon the agricultural products and live stock produced therefrom for a living.

A budget was adopted by the district for $627.20 in 1937. A tax levy was made, resulting in tax collections, so that at the time of this application in the district court on October 11, 1937, the district had on hand the sum of $367.48. The defendant board on August 26, 1937, determined to close the school in the district for the ensuing year, and to send these two children, who were the only pupils of school age residing in the district, to the public school maintained by school district No. 52, at Absarokee, distant from the home of relatrix seven or eight miles.

It is alleged in the affidavit that on these facts it became the duty of the defendants to arrange and pay for the transportation, or to pay their board, rent, and tuition while actually attending the school; that the board has failed to do either; and that relatrix and her husband are without funds to pay for private schooling for their children, and the county superintendent has threatened to institute criminal proceedings against the relatrix and her husband under the compulsory school attendance law.

226

The father of the children is the chairman of the defendant board. On August 26, 1937, the other two members of the board tendered a written instrument wherein it was recited that the board agreed to pay $15 per calendar month for house rent, board, and transportation, subject to a deduction of 75 cents for each day that either of the two children was absent from school, except on account of illness. The offer was conditioned upon the approval of the county superintendent, which was obtained on September 2d following. This offer contained a form for the acceptance by the father, who failed to accept it. Later an appeal was perfected to the state superintendent to increase the allowance to $19 a month, which was granted, and a new offer was made to the parents in accordance with this ruling; the offer was declined by them.

Three questions are raised by this appeal, namely: (1) Where the board of trustees determines to close a school and transport or board the children while attending another school, has it performed its duty when it has made an allowance to the parents of the children, although inadequate, to provide for such services? (2) May the board contract with a parent of children, who is also a member of the board, for the transportation of his own children? (3) In the circumstances of this case, is relatrix entitled to relief by way of mandate? We will dispose of these questions in the order stated.

Our Constitution commands the legislature "to establish and maintain a general, uniform and thorough system of public, free, common schools." (Article XI, sec. 1.) By section 6 of the same Article, the legislature is commanded to provide, by taxation or otherwise, sufficient funds to maintain such a school in each organized district for at least three months in the year. These provisions are a solemn mandate to the legislature for the purpose of insuring to the people the system described. (*Grant* v. *Michaels*, 94 Mont. 452, 23 Pac. (2d) 266.)

The supreme court of New Hampshire has well said, in the case of *Fogg* v. *Board of Education*, 76 N. H. 296, 82 Atl. 173, 174, Ann. Cas. 1912C, 758, 37 L. R. A. (n. s.) 1110, as follows: "The primary purpose of the maintenance of the common-

school system is the promotion of the general intelligence of the people constituting the body politic and thereby to increase the usefulness and efficiency of the citizens, upon which the government of society depends. Free schooling furnished by the state is not so much a right granted to the pupils as a duty imposed upon them for the public good. If they do not voluntarily attend the schools provided for them, they may be compelled to do so. (P. S., c. 93, sec. 6; *State* v. *Hall*, 74 N. H. 61, 64 Atl. 1102; *State* v. *Jackson*, 71 N. H. 552, 53 Atl. 1021, 60 L. R. A. 739.) While most people regard the public schools as the means of great personal advantage to the pupils, the fact is too often overlooked that they are governmental means of protecting the state from the consequences of an ignorant and incompetent citizenship.''

The legislature, in providing for the operation of schools, has said:

(1) ''That the trustees of any school district in the state of Montana, when they shall deem it for the best interest of all pupils residing in such district, may close their school and send pupils of the district to another district or districts and for such purpose are hereby authorized to expend any moneys belonging to their district for the purpose of paying for the transportation of pupils from their district to such other district or districts, as hereinafter provided, and for the purpose of paying their tuition. * * * ''

(2) ''When they deem it for the best interest of such district and the pupils residing therein, that any of such pupils should be sent to a school in their own or some other district, they must expend any moneys belonging to their district for the purpose of either paying for the transportation of such pupils from their homes to the public school or schools of such district or for their board, rent or tuition while actually attending such school, provided that if there are five (5) pupils or less, then the following schedule shall apply: The following schedule shall also apply in all cases of transportation of five (5) or less children. * * * ''

228

(3) "The board of trustees with the approval of the county superintendent may alter this schedule if they deem it for the best interest of the children and taxpayers of the district. * * * "

(4) "When a district is relieved of the necessity of supporting any school by the fact that all or a part of the children residing in the district are being provided with schooling in another district, it shall be the duty of the trustees in the district holding no school to assist in the support of the school which the children of their district are attending, in proportion to the relation the number of children from their district attending school in another district bears to the total number of children enrolled in the school in the other district. No district shall be entitled to share in the county apportionment if trustees refuse to comply with the above requirement when they are thus relieved of the necessity of providing any school." (Sec. 1010, Rev. Codes.)

The first quotation above from this section vests discretion in the board to determine whether it will conduct a school in the district or send the children elsewhere. Here this discretion has been exercised, and thereby the trustees are authorized to expend any money belonging to the district for the purpose of providing the pupils of the district with schooling in some other school—here in another district.

The second quotation becomes applicable after the exercise of the discretion vested in the board by the first quotation, and thereby the trustees are commanded to expend any money belonging to the district for the purpose of either paying for the transportation of such pupils from their homes, or for their board, rent, or tuition. Following this, not quoted, is a schedule designed to apply where the cost of such services for fewer than five children is involved. The second quotation permits the board to exercise its discretion as to whether it will transport or pay for the board and rent. The board may exercise its discretion as to which it will do, but it must do one or the other. This schedule may be used by the board without the consent of

the county superintendent, but if it becomes necessary to alter this schedule, her consent to such alteration is necessary.

The board has here failed to exercise the discretion vested in it by the statute. This court has not, nor has any other court, the power to compel the board to exercise its discretion in a particular way, but will compel the board to exercise the power conferred upon it by the law. The views here expressed are in accord with the current of authority as found in the decided cases from other jurisdictions on statutes in principle not unlike our own, as is illustrated by the following decisions: *Dennis* v. *Wrigley,* 175 Mich. 621, 141 N. W. 605; *Ridings* v. *Elkhurst School Dist.,* 21 Sask. L. R. 471; *Riecks* v. *Independent School Dist.,* 219 Iowa, 101, 257 N. W. 546; *Dermit* v. *Sergeant Bluff Consol. School Dist.,* 220 Iowa, 344, 261 N. W. 636; *Sommers* v. *Board of Education,* 113 Ohio St. 177, 148 N. E. 682; *Gordon* v. *Wooten,* 168 Miss. 717, 152 So. 481.

Our statute is unlike the one before the Wyoming court expressly limiting, without any exception, the power of the board to alter the statutory schedule of fees for transportation, in the case of *Gale* v. *School Dist. No. 4,* 49 Wyo. 384, 54 Pac. (2d) 811.

The last quotation from the section provides the manner of ██ ██ paying the tuition in instances of this character. In conclusion on this point, when the board determines to close the school, as in this instance, it must then either furnish to the pupils residing in the district transportation to another school or provide board and rent.

The pertinent portion of section 1016, Revised Codes, reads: "It shall be unlawful for any school trustee to have any pecuniary interest, either directly or indirectly, in the erection of any schoolhouse, or for warming, ventilating, furnishing, or repairing the same, or be in any manner connected with the furnishing of supplies for the maintenance of the schools, or to receive or accept any compensation or reward for services rendered as trustees."

It is contended that a school board may not contract with one of the members of its board for the transportation of his own children because of this statutory prohibition. The su-

preme court of Washington has held a substantially identical statute to prohibit the payment of transportation to a member of the board or his wife, in the case of *Directors of School Dist. No. 302* v. *Libby,* 135 Wash. 233, 237 Pac. 505, although the same court had within a year upheld a contract for transportation made to the son of a trustee, in the case of *Cunningham* v. *Union High School Dist.,* 131 Wash. 41, 228 Pac. 855.

We have given careful consideration to the reasoning of the Washington court, but we are of the opinion that under a similar statute the Kentucky court has announced a better rule, in the case of *Keenon* v. *Adams,* 176 Ky. 618, 196 S. W. 173, 176, where it was said: ''Neither of these sections seems to prohibit or embrace the entering into a contract by the board of education with a person holding the office of a subdistrict trustee for the transportation of pupils to and from the schools in a consolidated district. A subdistrict trustee is prohibited from being financially interested in a contract to buy land for the school or for the erection or repair of the schoolhouse or for equipment or supplies for the school, but the legislature has not seen proper to make unlawful by such trustee the receipt of compensation for transporting pupils to a consolidated school, and it is not unlawful if the arrangement is unmixed with graft or corruption.''

It is noteworthy that the board, in contracting for transportation or room and board under this particular statute, must either follow the schedule prescribed in the section itself, or secure the approval of the county superintendent. We conclude on this question that the furnishing of transportation or its equivalent is not within the prohibition of section 1016.

It is here argued that the board has exercised its discretion and that mandamus will not lie to control that discretion. True, the board has acted, but acted erroneously upon a preliminary question of law. The courts will by mandamus control the decision of a purely preliminary question of law. (*State ex rel. Woodward* v. *Moulton,* 57 Mont. 414, 189 Pac. 59.) We have here decided that when the board exercised its lawful discretion to close the school, it must then exercise another discre-

tion or power by determining whether it would provide the children of relatrix with transportation or board and rent, and, in any circumstances, tuition, at the Absarokee school. If the schedule provided by statute is inadequate to provide transportation or its equivalent in board and rent, then the defendants must provide these facilities at whatever cost, but with the approval of the county superintendent. We cannot control the board's discretion, but we can compel the exercise of it in a lawful manner.

The judgment is reversed and the cause remanded with directions to the trial court to make an order overruling defendants' motion to quash, and such further order as may be appropriate in the premises not inconsistent with the views expressed in this opinion.

Associate Justices Stewart, Morris and Angstman concur.

Mr. Chief Justice Sands, having been absent on account of illness, did not hear the argument and takes no part in the foregoing opinion.