The opinion of the court was delivered by
MoEnery, J,
The accused was indicted for murder and convicted of manslaughter and sentenced to hard labor. He appealed.
There are several bills of exceptions in the record.
No. 1 contains a variance of statement of facts between counsel and trial judge. On the repeated rulings of this court, we accept the latter’s statement. It completely destroys the effect of the bill. The statement also shows that the district attorney withdrew his objection to the introduction of proof, without first showing an overt act on part of deceased, of threats communicated to the accused.
The second bill is as follows:
"When the State had offered the testimony of the witnesses Walter Neal and Fleet Tillman to show that after the difficulty between accused and deceased had occurred, and after the deceased had gone home, some two hundred yards, Fleet Tillman, the son of the deceased, returned to the house of accused to get his father’s cap and a piece of the ear of said Tillman, deceased, which in the scuffle subsequent to the firing of the shot had been bitten or torn off by the *844 accused, and that the accused had kicked the cap toward the boy and told him to get out of his yard, and that on the discovery by the boy of the piece of ear lying on the ground, the accused had put his foot on it and stamped it. Oounsel for accused objected to the introduction of said evidence as not constituting a part of the res gestee, that the subsequent acts of the accused, away from and out of the presence of the deceased, and fifteen or twenty minutes after the difficulty was over, could not be connected with the difficulty itself in any way and that such proof could only be offered to prejudice the minds of the jury against the accused, and draw their minds away from the facts of the homicide, which objections were overruled by the court and the testimony admitted for the following reasons, viz.: the evidence shows that the only means Tillman had to prevent accused from shooting him again was to close with him, and in the scuffle that ensued the ear or a portion of the ear of the deceased was bitten off. The facts detailed in defendant’s bill occurred so shortly after the shooting by accused as to constitute them a part of the res gestee and are also admissible to show the feelings of the accused at the time of his attack upon the deceased.”
The tendency of recent adjudications is to extend rather than to narrow the scope of the introduction of evidence as part of the res gestee. As a general rule, when it is necessary to inquire into the general nature of the act committed, or the intention of the party who did the act, proof of what the person said at the time of doing it is admissible evidence as part of the res gestee, for the purpose of showing its true character. The general rule also is that the declaration sought to be proved must be contemporaneous with the event sought to be proved as the principal act; but when there are connecting circumstances they may, even when made some time afterward, form a part of the whole res gestee. 8 Wallace, 397; 55 Penn. 402; 57 Mo. 93; 34 American Reports, 479; 38 An. 459, 949; 44 An. 958.
Mr. Taylor, in the Law of Evidence, gives the fourth rule for the test of the admissibility of such evidence, as follows:
“That an act can not be varied, qualified, or explained by a declaration which amounts to no more than a mere narration of a past transaction, nor by an isolated conversation, nor by an isolated act done at a later period.” Taylor on Evidence, paragraph 523,
The trial judge’s statement is that the ear had been severed in the fight, and that this fact had been proved.
*845 The finding of a piece of the ear on the ground, immediately after the difficulty, was a fact competent to be proved, to show the fact of the severance of the ear, and the wounds inflicted upon the deceased. The act of stamping upon the ear, and the refusal to give it to the boy, was a fact contemporaneous with the discovery of the ear, and inseparable from the narration of its discovery by the boy. The refusal to let the boy have the piece of ear was also competent and admissible evidence to prove that the accused endeavored to suppress evidence as to the fact of its having been torn or bitten off during the fight.
The incident of kicking the cap toward the boy, and ordering him to leave his premises, is so insignificant that it would be an absurdity and a denial of justice to disturb the verdict, because this fact had no reference to the principal one.
No. 3 was reserved to the ruling of the trial judge on the examination of a witness for the defence. This also is disposed of by the statement of the trial judge, who says that he does not “agree with counsel as to his statement in the bill. The cross-examination by the district attorney of the witness, Miss Arzela Harris, was confined strictly to matters and things testified to by the witness in her examination in chief.”
No. 4. The consideration of this bill will dispose of the others, as they depend upon the fact whether or not the deceased had made a hostile demonstration against the accused. The witness was offered to prove a general threat to kill a man before sundown, made by the deceased, which would corroborate the communicated threat testified to by Arzela Harris, and also the overt act testified to by her of deceased against accused. The trial judge states that the ruling as to the general threat was in consequence of no overt act having been proved.
His ruling is not, therefore, within the doctrine enunciated in case of State vs. Williams, 40 An. 168.
The statement for the reasons for his rulings is thus given by the trial judge: “ While Miss Harris, the daughter of the accused, did swear that Tillman (deceased) came into the house of her father with an ox whip, she was fully contradicted by Neal and Baden, both of whom swore positively that the accused, Tillman, did not come into the house that night, and made no threats whatever; that they were there at the time they say Tillman come in with the ox whip *846 and made threats, and that he did not come into the house and made no threats whatever. As to the evidence of Miss Arzela Harris, as to the overt act at the time of the shooting, it was shown by the testimony of Teddlie and Neal, that Teddlie shut the door when he went out on the gallery and took [Tillman by the arm; that Harris came out the back way and from around the house; that there was no window in the front of the house; that Miss Harris, the witness, was in the house; that she was in the house during the whole difficulty, and could not have seen anything that took place; that they were positive she was not on the gallery nor in the yard at any time during the difficulty, and whose statements are corroborated by the evidence of the witness Walker, sworn for the defence, and who was in the house himself at the time of the difficulty, and did not see any part of the difficulty, and says that Miss Harris was in the house during the difficulty outside; and further she contradicted herself in this: on being first placed on the stand she stated she was on the gallery when the shooting took place, and being recalled afterward stated she was in the yard near her father when the shooting took place.”
The trial judge’s ruling is that he has the sole and exclusive right to determine, after the introduction of evidence, the extent of the overt act, whether or not it was a hostile demonstration against the accused.
The counsel for the accused contends that the jury are the judges as to whether the testimony introduced as to the overt act of the deceased amounted to sufficient proof of that fact, and as to whether at the time he fired the shot the appearance of danger to the accused was such as to have justified him in firing upon the deceased.
The witnesses for the State all say that the deceased on hearing footsteps behind him, on nearing the [gate [of laccused’s premises, turned partially around, when he was fired upon by accused. The testimony of Miss Harris is that at the time the shot was fired the deceased was facing the accused, having broken away from the party escorting him to the gate, and was advancing in a threatening manner upon the accused, and exclaimed: “ By God; I will go into that house or die.”
Since the case of State vs. Ford, 37 An. 443, the rulings of this court have been uniform, adversely to the proposition submitted by the counsel for the accused. 37 An. 489, 644, 782, 896; 39 An. 817; 43 An. 861; 42 An. 753; State vs. Christian, 44 An. 950.
*847 In that case, State vs. Ford, this court said:
“ There is a wide difference between evidence of an overt act and proof oí the same. The theory of defendant’s counsel seems to be that there is no difference between the two, and that under the rule any testimony in favor of the commission of an overt act on the part of the deceased person is a proper and sufficient foundation for the introduction of such testimony, and that the trial judge is thus stripped of all discretion and of all power to consider the veracity or credibility of the witness mating the statement. Such an interpretation of the rule is flagrantly erroneous. * * *
‘ '• In passing on such a question, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered.evidence, and that authority necessarily includes the discretion to ignore and not to consider testimony which his reason refuses to believe.”
The ruling of the trial judge seems to have been based in strict conformity to the doctrine in this case.
Judgment affirmed.