BREAUX, C. J.
The defendant was charged with murder by taking the life of Richard Flynn on the 7th day of April, 1902.
He was tried, and found guilty as charged, on the 16th day of December, 1903.
From the verdict of the jury finding him guilty as charged, and from the sentence of the court condemning him to suffer the penalty of death, he appeals to this court.
The learned counsel for defendant having made the question res geste vel non the ground of defense, and, in consequence, the ground to be specially reviewed on appeal, we take up that issue.
Both the prosecuting officer and the counsel for defendant agree in the statement, sustained by the jurisprudence of this court, that the question of res geste must be determined according to the circumstances of each case.
We gather from the transcript that on the night of the shooting which resulted in the death of Flynn the two police officers who were near the locality of the shooting heard shots and saw them- fired, and after the first two shots which were fired — one immediately following the other — they ran to the place where the shooting occurred, and to the place where the wounded man lay. To quote from the narrative of the bill of exceptions:
“The witness saw the entire affray from the moment that the first flash was seen, and up to-the time that he reached the wounded man no one had reached the scene.”
They were 400 feet away when they saw the light of the shots. The testimony is that it took them 10 or 14 seconds to run over the ground — evidently an exaggeration, as they could not run the distance in so short ,a time. The statement of the witness regarding this fast running ceases to be absurd only when it is considered, as we infer, that this witness (one of the two officers in question who came up after the shooting) desired to convey the idea that no time was lost in running from where they were standing to the spot of the shooting. They found the deceased in the gutter, alongside of the curb. It was at that time that the witness, one of the officers before referred to, asked him who shot him. The answer of the deceased was, “Foley shot me without cause or provocation.”
It was to this statement of the deceased that the defendant, through counsel, reserved a bill of exceptions, which brings up the point before us for decision. The court admitted the said declaration of the deceased as part of the res geste.
The trial judge adds the following to his narrative in the bill of exception, which we quote a second time for the sake of connecting statements:
“The witness saw the entire affray from the moment that the first flash was seen, and up to-the time that he reached the wounded man no one had reached the scene.”
The defense lays some stress upon the form of the answer of the witness. We, for that reason, insert the testimony on -the point in the words of the witness:
“Q. When you ran to this man, did you stop and ask him immediately about his condition ?
“A. Yes, sir.
“Q. Did you ask him, when he was lying down who shot him right then?
“A. Yes, sir, when I went there I tried to grind out who it was. I tried to find out who-shot him. (Italics ours.)
*55 “Q. As soon as you reached him you began to ask him questions right at once?
“A. Xes, sir.”
The contention on the part of the defense is that the statement of the witness was not coincident with the shooting or immediately after.
It was not coincident with the shooting it is true. The question arises whether it was immediately after in time to consider it a part of the res gestse.
Only a brief period of time had elapsed and nothing we infer had been said, after the shooting, to the moment the officers came to where the deceased was in the gutter.
In view of the gravity of the penalty, we would readily adopt the view,' followed in certain jurisdictions, that the declaration must be coexistent with the act, or so near that the intervening time is almost imperceptible ; but our court, as we read the decisions, holds differently, and, of course, that which our jurisprudence held to be law yesterday must be held to be law to-day, unless there was manifest error committed.
Thus, in State v. Thomas, 30 La. Ann. 602, the court said:
“It is not necessary that the declarations be concurrent; it is enough if they exclude all appearance or idea of design.”
The decision in State v. Revells, 34 La. Ann. 383, 44 Am. Rep. 436, is very similar.
The witness in that case heard the shot and the cry of the deceased, hurried to the spot, came to it about two minutes after the shooting, and it was then that deceased made statements “touching the person who had shot him.” The accused was not present.
This testimony was admitted as part of the res gestse.
In State v. Molisse, 38 La. Ann. 383, 58 Am. Rep. 181, the court said:
“If the acts or declarations are unconsciously associated with and related to the homicidal deed, even though separated from it by a short time, they are evidence of the character of the deed and a part of the res gestse.”
This is an extreme case — as many as 10 minutes had elapsed after the fatal shot— and yet the court held that the testimony was admissible as part of the res gestae, because the homicidal act was sufficiently connected with the statement “to be an immediate concomitant of it.” We must say here we do not go that far in the case before us for decision. The learned court in that case stated:
“And this is what Greenleaf means when he says, ‘The trial judge must determine the admissibility of the evidence, and a large discretion is allowed him;’ and the court even adds that, according to Greenleaf, the ruling of the trial judge thereon should be conclusive.” Gr. Evidence, § 108.
To this decision we lend approval only to the extent that it may serve as analogy to the case in hand.
The court held in State v. Harris, 45 La. Ann. 844, 13 South. 199, 40 Am. St. Rep. 259, that when there are connecting circumstances they may, even when made some time afterward, form part of the res gestse, citing several decisions in support of its view upon the subject.
This court approved the utterance of the court of another state of this country, that the tendency of “recent adjudications” is to extend rather than to narrow the scope of the doctrine, and decided that a declaration not made at the place of the event, but a little over half a square away, under the facts circumstantially stated in the opinion, was admissible as part of the res gestse. Id., 45 La. Ann. 844, 13 South. 199, 40 Am. St. Rep. 259.
We have been at pains to examine each of the decisions to which we have referred, and, as we read them, in each case the.statement constituting res gestse was held admissible when made at a time so near the act as reasonably to preclude all idea of design.
While we are not inclined to go as far as was held in some of the cited cases, we *57 think we find in each enough to preclude the possibility on our part of retracing our steps and of holding that the statement, to be admissible as res gestee, must be concurrent with the act.
In all these cases there was intervening time between the statement and the act. It is true it was found that the statement and the act closely following were connected, under circumstances, however, not more evident, as to concomitance of the act and the statement, than in the case at bar.
The commentators upon the subject have not interpreted jurisprudence differently from the views in the decisions to which we have just referred.
They concur substantially in saying that the statement of the deceased is admissible, provided it is made so soon afterward as to exclude all idea that it was made with the view of fixing the act on the defendant or of assisting in his arrest.
Wharton, Criminal Ev. § 263; Bishop, New Crim. Procedure, § 1086; Bradner on Evidence, 494-agree. Deliberate design vel non is the test.
Here we have not found deliberate design in the answer of deceased, who, while writhing in paim, lying prone in the gutter, as we understand, said: “Foley shot me without cause or provocation.”
Nor was there anything in this answer suggestive of the desire to give information that might lead to defendant’s arrest. It was, we take it, the natural utterance of a gravely wounded man.
After a careful review of the decisions to which learned counsel for the defense invited our attention, we did not leave the subject impressed with the idea that the decisions were as far apart from those we have just reviewed as they at first appear. .
In nearly every one of these cases the predicate was a statement narrating the events, and the conclusion was reached that the declaration was not part of the res geste. On the way from premise to conclusion there are expressions, properly, we think, holding that the declaration, to be admissible beyond all question, should be immediately after or in some way “concomitant” with or directly relative to the act itself. There must only a brief period intervene, and not the least design appear. We understand that this is in the main the trend of the authorities in question.
There is always some difference in the facts of a case. The similitude is not complete. There is no question but that the decisions cited by counsel for defendant have the appearance of being in point. The question is, shall we, because of this, change the ruling of this court on the subject?
In one of the cases cited, the court said:
“But it is well settled in this state that, to make such matter admissible, it must have been concurrent with the act or transaction in issue, and a part of it, and that a narrative of a transaction completed and finished when the narrative is given, though made while fresh in memory, and so soon after that the party had not time, probably, to imagine or concoct a false account, is inadmissible.” State v. Carlton, 48 Vt. 643.
In that case the court sums up the facts on this point with the statement that the declaration offered as part of the res gestse was no part of the act or transaction from which the death resulted; “that it was finished and ended some time previous to the making of the declaration, and it was not so connected with any part of the act or transaction as to make it admissible.”
In the case before us for decision» the police officers ran to where the deceased was, and were near him and heard the declaration before any one came up.
In the second case cited by defendant’s counsel, that of People v. Ah Lee, 60 Cal. 90, the court says:
“That in the admission of testimony of this character much would have to be left to the exercise of the sound discretion of the judge at the trial.”
*59 The court said on the merits of the question:
“In the case now before ns it does not appear that anything occurred between the defendants and the deceased after the stabbing, and yet the prosecution was permitted to ask the witness what he heard either of the parties say at the time of the stabbing- or immediately after. In response to it the witness might have stated what was said by the injured party after the assailant had fled and he himself had reached .a place of safety. And such appears to have been the construction which the witness, court, and counsel placed upon the question. The statement to what the witness testified related to an act which had been completed, and the statement was clearly made with a view to the apprehension of the offenders.”
We do not infer that any one is of the impression in the case before us that the declaration of the deceased was directed toward enabling the police to apprehend the offender. That theory has not been suggested, and we must say that we have not been led to such an inference by reading the testimony which comes to us with the transcript.
The other decision cited, People v. Wong Ark, 96 Cal. 128, 30 Pac. 1115, is very much to the same effect, and adds emphasis to the rule that the declaration must be of facts talking through the party. It all comes to the idea, expressed in other words, that res gestee is not admissible when it is not part of anything done or something said while something was being done, but is something said after something done, as clearly expressed in Reg. v. Redingfield, 14 Cox, 341 (English case), which goes further in excluding such declarations than the courts of this country.
Cockburn, C. J., in the cited case, says:
“I regret that, according to the law of England, any statement made by the deceased should not be admissible.”
Here the same rule prevails, except when the words are prompted by the suffering endured and while writhing with pain immediately after; when it is, as it were, the voice of the wound inflicted that speaks.
We leave the decisions cited by counsel for defendant, to say that reliance is placed by the defense on the decision in the case of State v. Charles (decided in February last, No. 15,098) 111 La. 933, 36 South. 29, in which the statement of the deceased to his attending physician was held inadmissible, under ^circumstances which showed that there was deliberation on the part of the physician at least, who came to where the wounded man was, not a minute or two after the shooting, hut nine or ten minutes, and said in substance that he wished to know, before beginning with the case and making attempt at relieving the pains of the fatally wounded man, “who did the shooting.” The question was pregnant with a suggestion that some one must he named as the guilty party.
There was nothing of the kind in the case here, unless the word “grind,” which we have before italicized, can give rise to an inference of impropriety on the part of the public officer. The word seems barren of meaning, used as it was. It may be that it was, as suggested by the district attorney at bar, that, owing to a stenographic error, the word “find” was changed to “grind.”
We have not found that this “grind” was connected with any question asked, or with anything which took place, while the police officers were standing near the deceased.
The declaration of the deceased that he was shot without cause or provocation is part of -a natural impulse. The wounded man who feels that he has been wronged and injured will nearly always immediately give vent to the expression that he did not provoke the act. At any rate, we do not think that there was anything in the words showing a desire for revenge. One can impulsively declare that he is innocent without seeking thereby to injure, or to have his assailant arrested and punished.
We have found no ground upon which to reverse the verdict and sentence.
Only one alternative remains, and to it we have arrived only after having carefully considered each of the decisions of this court before mentioned.
*61 We are constrained, in onr view of the law .and jurisprudence, to affirm the verdict and sentence and judgment.
For these reasons, the judgment appealed from is affirmed.