MONROE, J.
Defendant has appealed from a conviction of manslaughter on a charge of murder.
[1] 1. His first bill of exception shows that, when the case was called for trial, the district attorney moved for a continuance on account of the absence of a witness, and, upon objection by counsel for defendant, of *466 fered a written statement of the testimony which the witness was expected to give, and the ease thereupon went to trial upon the admission that the witness, if present, would so testify. When the statement was offered, counsel for defendant objected to the following included therein,, to wit:
“Clara Williams was sitting in the corner and said nothing. After Bernard went out, Clara Williams walked out on the gallery. I heard Bernard fussing and cursing on the outside, and I walked to the door and said, ‘Don’t be quarreling out here; come inside of the house.’ I then turned around to go to the kitchen, and I heard a shot.”
The objection was:
“That, were the witness present, she would not be heard to so testify, because^ * * * what the witness said before the shooting, upon matters not connected with the shooting, was merely the statement of a third party, not connected with or a party to the transaction; not a part of the res gestee, irrelevant, and inadmissible in evidence.”
The bill is without merit. Defendant was charged with the murder of Clara Williams, and the testimony of the witness that he and she went out on the gallery, and that the witness heard him “fussing and cursing on the outside,” was not objected to, and carried with it whatever of suggestion or importance there may be in the testimony, to wit, that he was fussing with some one; the jury being left to determine with whom! The remark of the witness, to which the objection was made, was merely an oral statement of the mental impression to which she had already testified, to wit, that defendant was fussing or quarreling with soihe one, and immediately preceding, as it did, what we take to have been the fatal shot, was part of the res gestee. State v. Tompkins, 82 La. Ann. 620; State v. Corcoran, 38 La. Ann. 949; State v. Harris, 45 La. Ann. 842, 13 South. 199, 40 Am. St. Rep. 259. In any event, it does not appear that the remark could have operated to the prejudice of the defendant.
[2] The second bill recites:
“That during the trial, * * * and after six jurors had been impaneled and sworn, the judge stated in the presence of said six jurors, and announced as law, that the act of killing applies [implies] malice, to which statement * * * defendant * * * objected as not being law and erroneous and injurious to the accused, and excepted * :!: * and asked the court * * * to instruct the jurors that at no stage of a criminal trial can there arise any presumption or [of] fact of any character against an accused; that an accused can only be found guilty upon facts proven, and not presumptions; and further asked the court to instruct the jury that the judge’s remarks, as above stated, were made in error, and were not the law. The court refusing to do so, or to so instruct the jury, but stating to the jury not to consider the statement made by the judge to the jury as instructions, but will make it and give it to the jury at the proper time in its charge, to which statement, ruling, and refusal * * * defendant * * * objected and excepted.
“Per Curiam. Counsel for the accused stated to the juror, on his voir dire, that if the state proved that the accused killed the deceased, but did not prove malice, and the defense offered no evidence at all, his duty would be to find the accused not guilty. The district attorney stated that, if the state proved a deliberate killing and no defense is made, the law presumes malice. The court agreed with the district attorney, but stated to the jury that the court would instruct them fully upon the law, at the proper time, and that they should not consider the remarks as instructions to them.”
We find no bill of exception to the judge’s charge, and as the matter referred to in the ' bill above quoted was left open, to be therein fully dealt with, we must presume that it was dealt with to the satisfaction of the defendant.
[3] 3. The third bill recites:
“That during the progress of the trial of this cause, and while counsel for defendant was examining a juror on his voir dire, the court intervened, stating, in presence of the jury, that the question propounded by counsel was intended as a catch to the juror, to which remark the defendant excepted, as calculated, though probably not intended, to effectively create a prejudice in the minds of the jury against the defendant.”
As we are not informed what question elicited the remark complained of, we are not in a position to rule on the objection. *468 If the question was intended, as a catch to the juror, and the bill does not deny it, it was the province and duty of the judge to so state, and such statement would not be •obnoxious to the objection set out in the bill.
[4] 4. This bill (No. 4) was reserved to the refusal of the trial judge to order a mistrial upon a suggestion that the jury were unable to agree; that they were suffering great hardships for lack of accommodations; and that a verdict brought in under such cir•cumstances would not be of their voluntary finding, but would be the result of coercion. There is nothing in the record to sustain the bill, save the bare suggestion of the defendant that the mistrial be ordered for the reasons stated. The judge’s statement is that the facts referred to were brought out (subsequently) on the hearing of the motion for new trial. The bill is therefore without merit.
5. The motion for new trial (to the' overruling of which the bill No. 5 was reserved) alleges that the verdict was the result of coercion in that the jury were locked up during one night, and were threatened with similar treatment for another night, in a .place where they were uncomfortable and were subjected to physical suffering, endangering their health, etc. The foreman of the jury was allowed to testify (over the objection of the state) to the physical discomfort to which he and the other members of the jury were subjected; but his concluding statement was:
“That it is not to his knowledge, nor is it his belief, that any of the jurors agreed to the verdict as rendered, by cause or fear [because of fear?] of being locked up in the courtroom another night; but, on the contrary, some of the jurors expressed that they would remain all night, if necessary.”
It was admitted:
“That the other 11 jurors, if sworn as witnesses, would testify in the same manner and form and to the same extent as did Mr. Millet, foreman.”
The state offered to prove by the witness that at no time was there any discussion relative to the acquittal of the accused; that no juror, at any time, voted for an acquittal; that the difference of opinion, at all times, was whether or not the accused should be (found) “guilty of manslaughter or guilty without capital punishment”; “that 10 jurors stood for manslaughter and 2 for guilty without capital punishment, and the 2 who stood for guilty without capital punishment finally agreed to a verdict of manslaughter.”
To the offer so made, counsel for defendant objected on the ground that the testimony offered would tend to impeach the verdict, and the objection was sustained, and no bill was reserved.
As the testimony failed to sustain the charge that the physical discomfort to which the jury was subject operated to coerce their verdict, the new trial was properly refused. In so holding, however, we refrain from expressing any opinion upon the merits of the state’s objection to that testimony, coming, as it did, from the foreman and members of the jury, upon the ground that it tended to impeach their verdict.
The verdict and sentence appealed from are affirmed.