(89 South. 408)

No. 24603.

## CITY OF SHREVEPORT v. DALE.

(June 15, 1921. Rehearing Denied June 30, 1921.)

*(Syllabus by Editorial Staff.)*

1. Municipal corporations ⬅594(6)—Keeping of public place for billiards, irrespective of gambling, may be prohibited.

Shreveport City Charter (Acts 1912, No. 220) confers power on the city to suppress keeping of a public place for billiards, irrespective of gambling, and is valid.

2. Municipal corporations ⬅594(6) — Ordinance prohibiting keeping place for playing dominoes irrespective of gambling held unauthorized by charter.

An ordinance making it an offense to keep a public place for the playing of dominoes irrespective of gambling *held* void, being unauthorized by city charter, Act No. 220 of 1912 authorizing the city to suppress gaming with billiards and dominoes for money or property.

3. Statutes ⬅40—Statute held not void for want of enacting clause.

Act No. 25 of 1920, amending Act No. 158 of 1898, § 10, reading: "To amend and reenact section 10 of Act No. 158 of the General Assembly of the state of Louisiana for the year 1898, being an act entitled: To incorporate the city of Shreveport in the parish of Caddo, to define its boundaries and provide for its better police and municipal government. Section 1. Be it enacted, etc. That"—*held* not void for want of an enacting clause, under Const. art. 22, providing that "the style of the laws of this state shall be: 'Be it enacted by the General Assembly of the state of Louisiana,'" since such constitutional provision is merely directory, and since the omitted words can be readily supplied by the attending circumstances.

O'Niell, J., dissenting in part.

Appeal from City Court of Shreveport; David B. Samuel, Judge.

George R. Dale was charged by the City of Shreveport of violating an ordinance by operating a public place where pool, billiards, and dominoes were played, and where pool tables, billiard tables, and tables for dominoes were operated and from judgment sustaining his motion to quash the charge the City appeals. Judgment set aside in part, and case remanded.

George G. Dimick, of Shreveport, for appellant.

Foster, Looney & Wilkinson, of Shreveport, for appellee.

PROVOSTY, J. Affidavit before the city court of the city of Shreveport charged that accused—

"did unlawfully conduct and operate and maintain a public place at No. 309 Texas street where pool and billiards and dominoes are played and where pool tables and billiard tables and tables for dominoes are operated, and did permit the use of pool tables and billiard tables and tables for dominoes in the said place operated and controlled and maintained by him."

This affidavit was founded on sections 1 and 2 of an ordinance of the city reading:

"Section 1. Be it ordained, etc., by the city council of the city of Shreveport, in legal and regular session convened, that it shall be unlawful for any person, firm or corporation within the city of Shreveport to conduct or operate or maintain any public place where pool, billiards, or dominoes are played, or where pool tables, billiard tables for dominoes are. operated.

"Sec. 2. Be it further ordained, etc., that it shall be unlawful for any person, firm or corporation within the city of Shreveport to permit the use of any pool table or billiard table, or tables for dominoes, in any place operated or controlled or maintained by such person, firm or corporation."

The city adopted this ordinance under authority of paragraph 4 of section 1 of the city charter (Act 220, p. 498, of 1912), providing:

"That the council shall have full power to make and pass such by-laws and ordinances as are necessary and proper. * * *

"Fourth. To prohibit, prevent and suppress mock auctions, and every kind of fraudulent game, device or practice, and to punish all persons managing, using, practicing or attempting to manage, use or practice the same, and all persons aiding or abetting in the management, use or practice thereof. To prohibit, regulate, restrain or prevent persons from gaming for money or property, whatever may be the amount thereof, with cards, billboards, dice, dominoes, tenpins alleys (whatever may be the number of pins used to the contrary notwithstanding) tables, balls, alleys, wheels of fortune, boxes, machines, or, other instruments or device whatsoever or character of game whatsoever, in any building or place in the city, and to punish the person keeping the building, instrument or means of such gaming, and to compel the destruction of all such instruments or means. To prevent, prohibit and suppress all lotteries or raffles for drawing or disposing of money or other property or things

whatever, and to punish all persons maintaining, directing or managing the same or aiding in the maintenance, direction or management thereof. To regulate (or suppress) * * * billiard tables, * * * concerts, itinerant seller of medicine, corn doctors, pet bear exhibitions, for pay, fortune tellers, cane or knife racks and like device, gift enterprises, lung testers, feather renovators, muscle testers or developers, peddlers, flying jennies, pistol or shooting galleries, theatrical exhibitions, skating rinks, roller coasters, and other like things, dance houses and rooms, keno rooms, opium dens, hop joints and clairvoyants. To prohibit and suppress desecration of the Sabbath Day and all kinds of indecency and other disorderly practice and disturbance of the peace. To create by ordinance such district or districts within which all bars, saloons and clubs or other places intoxicating liquors are disposed of, may be confined; to regulate the police of theaters, public halls, taverns, places of shows and exhibitions, houses for public entertainments, shops for retailing liquors, houses for public prostitution, and to order the same to be closed whenever the public safety and tranquility may require it, and to impose such regulations and duties upon persons keeping such place as they may deem proper and necessary, and to punish all vagrants."

[1] This statute, after having conferred authority to suppress gaming with billiards and dominoes for money or property, proceeds to confer authority to suppress billiard tables without anything being said as to their being used for gambling.

Following the statute, the ordinance suppresses the keeping of a public place for billiards irrespective of gambling; and the affidavit follows the ordinance.

Learned counsel contend that the keeping of such a place without any gambling feature is not a nuisance per se, and cannot be made a nuisance by law, and therefore cannot be suppressed. The Supreme Court of the United States decided differently in the case of Murphy v. California, 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153. See, also, 6 R. C. L. 220, § 213.

[2] While, however, said statute authorizes the suppression of public places for billiards.

irrespective of gambling, it does not do so of public places for dominoes. In so far therefore as the ordinance makes it an offense to keep a public place for the playing of dominoes without gambling, it is unauthorized and void, and the affidavit based upon it charges no crime.

[3] The city charter (Act 158 of 1898, § 10) authorizes punishment by a fine not exceeding $100 and imprisonment not exceeding 10 days for the violation of ordinances. Act 25, p. 27, of 1920, amended this to a fine not exceeding $600, and imprisonment not exceeding 60 days. The ordinance follows the latter statute. Its validity is attacked on the ground that the said Act 25 of 1920 is void for want of an enacting clause. It reads:

"To amend and re-enact section 10 of Act No. 158 of the General Assembly of the state of Louisiana for the year 1898, being an act entitled: To incorporate the city of Shreveport in the parish of Caddo, to define its boundaries and provide for its better police and municipal government.
"Section 1. Be it enacted, etc. That," * * * etc.

Article 22 of the Constitution reads:

"The style of the laws of this state shall be: 'Be it enacted by the General Assembly of the state of Louisiana.' "

In State v. Harris, 47 La. Ann. 386, 17 South. 129, this court clearly indicated its opinion that this constitutional provision was merely directory.

In State v. Cucullu, 110 La. 1092, 35 South. 301, this court said:

"The first objection urged to the constitutionality of the act is that the language of the enacting clause is, 'Be it enacted by the General Assembly that,' etc., instead of 'Be it enacted by the General Assembly of the state of Louisiana,' etc., the precise words of article 22 of the Constitution.

"The act referred to is found published among the Acts of the General Assembly of 1902 as Act No. 34, certified to by the Secretary of State of the state of Louisiana. It is signed by the Speaker of the House of Representatives, the Lieutenant Governor and President of the Senate, and the Governor of the state of Louisiana, and approved by the latter on June 19, 1902. This same objection was urged in State v. Harris, 45 La. Ann. 842, 13 South. 199, 40 Am. St. Rep. 259, and State v. Collins, 47 La. Ann. 578, 17 South. 128; and, although the necessities of those cases did not require an absolute decision upon it, this court, in referring to it, stated that the omission in the statute consisted only in leaving out the words 'of the state of Louisiana'; that 'there remained the substance of the enacting words required by the Constitution.'

"We think we would be sacrificing substance to mere form were we to sustain this objection.

"Article 21 of the Constitution declares that 'the legislative power of the state' shall be vested in the 'General Assembly.'

"When we find among the published statutes of the state an act reciting that it was enacted by the General Assembly, authenticated as this act is, we cannot possibly reach any other conclusion than that the General Assembly referred to is that of the state of Louisiana. Adams v. Lewis, 7 Mart. (N. S.) 402; Lallande v. Terrill, 12 La. 7."

The same thing may be said in the present case. The situation is not that of the total absence of an enacting clause, but is that of a curtailed enacting clause, which has omitted words readily supplied by the attending circumstances mentioned by the court in the Cucullu Case, supra.

The judgment appealed from which sustained the motion to quash is therefore set aside in so far as the keeping of a public place for the playing of billiards is concerned, and the case is remanded, to be proceeded with according to law on that charge.

O'NIELL, J., does not approve the doctrine announced in State v. Cucullu, 110 La. 1092, 35 South. 301.