VAUGHN & RAGSDALE CO., INC., Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

(No. 7,954.)

(Submitted July 7, 1939.  Decided July 14, 1939.)

[96 Pac. (2d) 420.]

*Mr. A. F. Lamey* and *Messrs. Johnston, Coleman & Jameson,* for Appellant, submitted an original, a reply and a supplemental brief; *Mr. Lamey* and *Mr. W. J. Jameson* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. John A. Matthews,* member of the State Board of Equalization, and *Mr. Ralph J. Anderson,* Counsel for Respondent Board, submitted an original and a supplemental brief; *Mr. Matthews* and *Mr. Anderson* argued the cause orally.

*Mr. John G. Brown* and *Mr. W. A. Brown, Amici Curiae,* submitted a brief.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from a judgment in favor of the defendants in an action to recover license fees paid under protest. The cause was tried by the court sitting without a jury on an agreed statement of facts supplementing admissions contained in the pleadings. The action involves the validity of Chapter 199, Laws of 1937.

The agreed statement of facts contains this provision: "The defendants tender and offer the following facts which are admitted by the plaintiff, but without admitting the competency, relevancy and materiality thereof; it being expressly stipulated and agreed that plaintiff objects to each and all of said facts on the ground that each of them is incompetent, irrelevant and immaterial to any of the issues herein, and particularly on the ground that the court has no power to go behind the enrolled bill as signed by the Speaker of the House and Lieutenant Governor as President of the Senate, and approved by the Governor of the State of Montana and deposited by him in the office of the Secretary of State, and that said facts, or any of them, are to be considered herein only as the court may determine them to be competent, relevant and material."

The established rule on this question is clearly set forth in the case of *State ex rel. McTaggart* v. *Middleton,* 94 Mont. 607, 28 Pac. (2d) 186, 187, where it was said: "This court can look behind the enrolled bill for one purpose only, and that is to see whether the constitutional mandate requiring that on the final passage of a measure the vote has been taken by ayes and noes, and the names of those voting have been entered on the journal." The rule applied in that case is in accord with all former decisions of this court on the same point, but, for the reasons that will appear later in this decision, to determine that question in the action at bar is not material. Here we are dealing with plain and unambiguous provisions of the Constitution and what the journals show as to the procedure relative to the passage of the bill by the legislative assembly is of minor importance and cannot be permitted to take precedence over the more vital constitutional questions involved. Whether this court will, in other actions, elect to depart from the established rule relative to going behind the enrolled bill to obtain evidence to sustain or impeach a legislative Act on other grounds than those specified in the *McTaggart Case,* is not of material importance in the case at bar. That question can be determined when an

action comes before the court in which it is a determinative factor.

House Bill No. 38 resulted in the enactment that appears in the 1937 Session Laws as Chapter 199. The bill as introduced carried the enacting clause prescribed by the provisions of section 1, Article V of the Constitution, which is in the following words and form: "Be it enacted by the people of Montana." This is the form of enacting clause prescribed by the above provision of the Constitution for measures initiated by the people. After the bill had been introduced and referred to a committee, it was amended so as to carry the correct enacting clause provided for a bill introduced in the legislative assembly, as prescribed by section 20, Article V of the Constitution, which is as follows: "Be it enacted by the Legislative Assembly of the State of Montana." Somewhere during the progress of the bill through the legislature, the committees, or through the hands of engrossing and enrolling clerks, the enacting clause was changed from that prescribed for a bill enacted by the legislature to the form that the bill first carried—that is, the form of enacting clause prescribed by the Constitution for measures initiated by the people.

With this defective enacting clause, the bill was signed by the presiding officer of each house, presented to the Governor, approved and signed by him, and deposited in the office of the Secretary of State, and the enrolled bill so deposited in the office of the Secretary of State was incorporated in the volume which contains the Acts of the legislative assembly of the State of Montana of the Twenty-Fifth Session, and is found in the Acts of that session with the enacting clause provided for measures initiated by the people, instead of the enacting clause prescribed by the Constitution for bills introduced and passed by the legislature.

The enacting clause is of the very essence of any bill introduced in the legislature. It is a matter of common knowledge that if a member desires effectively to kill a bill he moves to strike the enacting clause, and if the motion carries the bill is dead.

It is quite obvious that in the course of the bill through the ▮ legislature, and before it was signed by the presiding officer of each house and approved by the Governor and became a law, the enacting clause was changed. In the construction of this Act it is entirely immaterial, so far as this court is concerned, as to how, when, for what purpose or in what manner the change in the enacting clause was made. The measure comes before this court in the condition we find it in the duly authorized volume of the Session Laws of 1937, and in determining whether Chapter 199 is invalid or not we are confronted with a factual situation. It is entirely immaterial how the defective enacting clause happens to be a part of the measure. It is a legislative defect, and a defect which the legislature alone had the power to remedy. The legislative assembly of the 1939 session recognized the defect in the 1937 Act, and corrected that defect by reenacting the 1937 Act with an enacting clause as prescribed by the Constitution. (Laws 1939, chap. 163.) For the future, the license tax on chain stores has been fully and completely set at rest by the new Act, to remain so at the pleasure of the legislature, and this court is now concerned only with the controversy which involves the payment of the license tax paid under protest for the year 1938 imposed under the provisions of Chapter 199 of the 1937 Laws, which has been repealed. The 1939 Act did not specifically repeal the 1937 Act, but the new Act carries a general repealing clause (sec. 14) and there can be no doubt from its form and substance that the 1939 measure was enacted for the sole purpose of correcting the defective enacting clause and intended to replace the prior Act.

This court has the power to declare a legislative Act invalid, ▮ but it has no power to correct or amend an Act, or even construe it when expressed in plain and unambiguous language. "The courts must declare the law as they find it." (*Putnam* v. *Putnam*, 86 Mont. 135, 282 Pac. 855, 860, and cases cited.) "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted,

or to omit what has been inserted." (Sec. 10519, Rev. Codes; see, also, *Mitchell* v. *Banking Corporation of Montana,* 83 Mont. 581, 273 Pac. 1055.)

It is vitally important that we refresh our minds by a review of the pertinent constitutional provisions essential to transform a bill introduced in the legislative assembly into a law:

Section 20, Article V of the Constitution provides: "The enacting clause of every law shall be as follows: 'Be it enacted by the Legislative Assembly of the State of Montana.' " It is admitted that instead of this form of enacting clause, Chapter 199 of the Session Laws of 1937 carries the enacting clause prescribed by section 1, Article V, as heretofore quoted.

Section 27, Article V of the Constitution provides: "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislative assembly," etc.

Section 12, Article VII, provides: "Every bill passed by the legislative assembly shall, *before it becomes a law,* be presented to the governor. If he approve, he shall sign it, *and thereupon it shall become a law,*" etc.

Clearly, the legislature cannot enact a law. It merely has ▮ the power to pass bills which may become laws when signed by the presiding officer of each house and are approved and signed by the Governor, or which he allows to become laws without his signature by lapse of time, in the manner prescribed by the Constitution. The presiding officer of each house and the Governor have under the Constitution, an indispensable part of the making of every law. They are part of the machinery set up by the Constitution to make laws. Exercise of the veto power of the Governor raises a question not involved here.

House Bill 38, passed by the legislative assembly, is not the ▮ bill that was signed by the presiding officer of each house, approved and signed by the Governor, deposited by him with the Secretary of State, and which we find in the published Acts of the legislative assembly of the 1937 session as Chapter 199. This is true for the very simple reason that it was not

made a law in the form and manner prescribed by the provisions of the Constitution heretofore quoted. The bill passed by the two houses is not the identical bill approved and signed by the Governor and this court has no authority ''to insert what has been omitted.''

In the case of *Katerndahl* v. *Daugherty,* 30 Idaho, 356, 164 Pac. 1017, 1018, the house and senate passed a bill; it was signed by the presiding officer of each house, approved and signed by the Governor, but the enrolled bill failed to carry an amendment by the senate that had been agreed to by the house. A writ of mandate was sought to compel the Secretary of State to insert the amendment. The court quoted section 10, Article IV of the Idaho Constitution, which is identical with our section 12, Article VII, and then said: ''By the agreed statement of facts the bill as amended was never presented to the Governor, and therefore cannot be a law of the state.''

Section 29, Article III of the Constitution provides: ''The ▆ provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.''

Chief Justice Brantly, speaking for the court in *State ex rel. Peyton* v. *Cunningham,* 39 Mont. 197, 103 Pac. 497, 498, 18 Ann. Cas. 705, after quoting section 20, Article V of the Constitution, supra, relating to the enacting clause of bills introduced in the legislative assembly, amongst other provisions of that instrument, said: ''These provisions are to be construed as mandatory and prohibitory, because there is no exception to their requirements expressed anywhere in the Constitution.''

That section 20, Article V, is mandatory there can be no ▆ question. The English language is not susceptible of a more mandatory expression. It says that the enacting clause of every bill *shall be* in the words prescribed. ''When the terms of a statute are plain, unambiguous, direct, and certain, it speaks for itself, and there is nothing for the court to construe.'' (*State ex rel. Public Service Com.* v. *Brannon,* 86 Mont. 200, 283 Pac. 202, 206, 67 A. L. R. 1020. See, also, *State ex rel.*

*Du Fresne* v. *Leslie,* 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329.) This is a rule universally followed by all authorities on statutory construction, and the same rule applies in the construction of provisions of the Constitution. (*State ex rel. Gleason* v. *Stewart,* 57 Mont. 397, 188 Pac. 904; *State ex rel. Du Fresne* v. *Leslie,* supra.) "If no ambiguity exists ⁎ ⁎ ⁎ the letter of the law will not be disregarded under the pretext of pursuing its spirit." (*Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878, 881.)

The view has been advanced that the enacting clause of bills ■ introduced in the legislative assembly is merely a "flag" under which bills run the course through the legislative machinery, and that substance is sacrificed to form by insistence on regularity in such procedure. Such contentions might be plausible if the enacting clause of bills were not set down in the Constitution in plain and mandatory form. The painstaking work of the framers of our Constitution is worthy of greater consideration. It was said in *State ex rel. Woods* v. *Tooker,* 15 Mont. 8, 37 Pac. 840, 841, 25 L. R. A. 560: "It is but fair ■ to presume that the people in their Constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication." The tendency to disregard the profound regard shown for provisions of the Constitution by our predecessors has become all too common in these modern and iconoclastic days. Some wisdom at least was possessed by the men who carefully framed the Constitution. Again it was said in the *Woods Case,* quoting from Cooley's Constitutional Limitations, fourth edition, pages 94–96: "If, therefore, a constitutional provision is to be enforced at all, it must be treated as mandatory. And if the legislature habitually disregard it, it seems to us that there is all the more urgent necessity that the courts should enforce it. And it also seems to us that there are few evils which can be inflicted by a strict adherence to the law so great as that which is done by a habitual disregard, by any department of the government, of a plain requirement of that instrument from

which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed."

In the arguments in the case at bar liberal quotations are taken from cases decided by the courts of last resort of Kentucky, Tennessee and South Carolina, in which the courts of those states upheld legislative Acts wherein the bills carried enacting clauses not in entire accord with that prescribed by the respective Constitutions. These cases are of little value here. In none of them did the defective enacting clause purport to derive legislative power from any other source than the legislative assembly. In fact, in none of the three states mentioned is the initiative in effect, and all legislative power is in the legislative assembly, and hence any Act passed by the legislative assembly must have been the Act of the assembly. In this state laws come from two sources: from legislative Acts, and from measures initiated by the people. The Act under consideration purports to have been enacted by one of our legislative bodies—in fact it was enacted by the other.

We think the provisions of the Constitution are so plainly and clearly expressed and are so entirely free from ambiguity that there can be no substantial ground for any other conclusion than that Chapter 199 was not enacted in accordance with the mandatory provisions of that instrument, and that the Act must be declared invalid. It is unfortunate that the legislature failed to follow the mandatory requirements laid down by the people in the Constitution, but the courts have no more authority to overrule the people in that respect than has the legislature.

In view of our conclusions as set forth in the foregoing opinion, we deem it unnecessary to give further consideration to the numerous contentions and citations of authority of respective counsel.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff.

Mr. Chief Justice Johnson and Associate Justice Stewart concur.

MR. JUSTICE ANGSTMAN:

I dissent. I think the learned trial judge was correct in upholding Chapter 199, Laws of 1937.

It should be remembered that it was stipulated and the court found: That when the bill was originally introduced in the house as House Bill No. 38, the enacting clause read: "Be it enacted by the People of the State of Montana;" that it was amended in committee of the whole in the house and before its passage on third reading to read, "Be it Enacted by the Legislative Assembly of the State of Montana." In this manner, and without any further amendment of the enacting clause, the bill passed through both houses, carrying the exact enacting clause provided for in the Constitution. After the bill had been passed by the legislative assembly, a copy was made for presentation to the presiding officers of the two houses for signature, and in copying the bill someone, either inadvertently or intentionally but without authority, altered the enacting clause by substituting the word "people" for the words "legislative assembly." This was done on the first page of the copy of the bill. Whether this alteration was made before or after the presiding officers of the two houses had signed the bill it was impossible to determine. There is thus no justification for the statement in the majority opinion to the effect that "in the course of the bill through the legislature" the enacting clause was changed. The change took place after the bill had been passed in both houses of the legislative assembly.

The crux of the controversy here is whether it was or is permissible to resort to the legislative journals to ascertain the foregoing facts, or whether the courts must take the enrolled bill as signed by the presiding officers of the two houses and approved by the Governor as conclusive.

Whether the validity of a statute, certified, approved, enrolled and deposited with the Secretary of State can be impeached by resorting to the journals of the legislature is a subject upon which the courts have divided. Some courts hold that an authenticated, approved, and enrolled statute imports absolute

verity and is conclusive that the Act was passed in a con-stitutional manner; others take the view that this presumption is not conclusive but may be overcome by resorting to the legis-lative journals. Cases supporting each of these views are listed in 25 R. C. L. 894 et seq., and in 59 C. J. 623 et seq.

The reason for not going behind the enrolled bill is stated in 25 R. C. L. 896, as follows: "It has been declared that the rule against going behind the enrolled bill is required by the respect due to a coequal and independent department of the government, and it would be an inquisition into the conduct of the members of the legislature, a very delicate power, the frequent exercise of which must lead to endless confusion in the administration of the law." Or, as was stated in *Kilgore* v. *Magee,* 85 Pa. 401, quoted with approval in *State ex rel. Reed* v. *Jones,* 6 Wash. 452, 34 Pac. 201, 208, 23 L. R. A. 340: "If every law could be contested in the courts on the ground of informality in its enactment, the floodgate of litigation would be opened so widely, society would be deluged in the flow."

This court has spoken on that subject in the following cases: *State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645, *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582, *Palatine Ins. Co.* v. *Northern Pac. R. Co.,* 34 Mont. 268, 85 Pac. 1032, 9 Ann. Cas. 579, *Johnson* v. *City of Great Falls,* 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974, *State ex rel. Gregg* v. *Erickson,* 39 Mont. 280, 102 Pac. 336, *Barth* v. *Pock,* 51 Mont. 418, 155 Pac. 282, *State ex rel. Woodward* v. *Moulton,* 57 Mont. 414, 189 Pac. 59, *Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817, and *State ex rel. McTaggart* v. *Middleton,* 94 Mont. 607, 28 Pac. (2d) 188. The result of these cases is that this court has held either by way of *dictum* or otherwise that it will not go behind the enrolled bill to procure evidence upon which to condemn a legislative Act or to change its operative provisions as disclosed by the enrolled bill, except that it will resort to the legislative journals for the one purpose of determining whether the aye and no vote had been entered in the journals pursuant to the command of the Constitution.

Counsel for the defendants argue with much plausibility, and their argument finds support in many cases—perhaps the numerical weight of authority supports their contention—that the courts have a right, in a proceeding to impeach a legislative Act to resort to the journals to see whether any and all constitutional mandates have been complied with. That contention requires no consideration here. Resort to the legislative journals here is not to impeach, but to sustain, legislative action. Resort thereto is not for the purpose of changing the operative provisions of the Act. Here the enrolled bill on its face discloses at most an irregularity in the matter of the enacting clause.

Our duty, where an Act is assailed on constitutional grounds, is to uphold, if possible. We indulge every presumption that the members of the legislature have acted within the Constitution. This presumption of constitutionality reaches not only the subject matter, but applies equally to the procedural requirements in the enactment of laws. (59 C. J. 622, note 39.)

Where, as here, the suggestion of invalidity appears upon the face of the enrolled bill, we would be sacrificing substance for form and doing an injustice to the legislative assembly were we to shut our eyes to the undeniable fact, as disclosed by the legislative journals, that the bill carried the constitutional enacting clause throughout its legislative journey through both houses.

Reasons relied upon by courts which prevent reference to the journals to impeach an Act of the legislature, do not apply in a case where resort to the journals is had for the purpose of sustaining legislative Acts. The journals are made admissible by statute to prove the proceedings of the legislative assembly. (Subd. 2, sec. 10568, Rev. Codes.) To deny their admissibility here to uphold the hands of the legislature would be a gross perversion of the rule against resort to the journals out of respect to a coordinate department of government. While there seems to be a dearth of decisions bearing directly upon this question, yet there are those which tend to sustain this conclusion. (Compare *New York & Long Island Bridge*

*Co.* v. *Smith,* 148 N. Y. 540, 42 N. E. 1088, and *Rumsey* v. *New York & N. E. R. Co.,* 130 N. Y. 88, 28 N. E. 763.) But plaintiff contends, and the majority opinion holds, that if we are permitted to resort to the journals to establish the fact that the bill carried the proper constitutional enacting clause when it received the consideration of the two houses, it will not save the law, for then it would fall because the Act that was passed by the legislature was never presented to the Governor.

The case of *Katerndahl* v. *Daugherty,* 30 Idaho, 356, 164 Pac. 1017, is relied upon in the majority opinion; but there an amendment made by the senate and agreed to by the house was omitted from the bill. The bill as presented to the Governor omitted this amendment which was a part of the operative provisions of the bill. That case was correctly decided but has nothing to do with this case.

It is, of course, necessary for a bill passed by the legislature to be presented to the Governor before it becomes a law. (Sec. 12, Art. VII of the Constitution; and see *Charleston Nat. Bank* v. *Fox,* 119 W. Va. 438, 194 S. E. 4.) Here there is no question but that the bill with all of its provisions was signed by the presiding officers of the two houses and presented to the Governor. The only difference between the bill as passed by the legislature and as authenticated and presented to the Governor was the substitution of the word "people" for the words "legislative assembly," in the enacting clause.

Section 27, Article V of the Constitution provides: "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislative assembly immediately after their titles have been publicly read, and the fact of signing shall be at once entered upon the journal."

Under this section, the presiding officer of each house simply signs the bill after the title has been publicly read. It is not incumbent upon them to examine the enacting clause. They are entitled to presume from the reading of the title that the bill they sign has been properly prepared and that it is the bill passed by the legislative assembly. Also, under sec-

tion 12, Article VII, it is provided in substance that a bill passed by the legislative assembly shall be presented to the Governor before it becomes a law. But that which the Governor approves or disapproves is the operative provisions of the law. The bill as passed by the legislative assembly, as to its operative provisions, was presented to the Governor. The enacting clause is no part of the essence or operative provisions of a bill, but simply denotes the authority by which it is enacted. The purpose of an enacting clause was well stated by the supreme court of Tennessee, in the case of *State ex rel. Gouge* v. *Burrow,* 119 Tenn. 376, 104 S. W. 526, 529, 14 Ann. Cas. 809, as follows: "The purpose of provisions of this character is that all statutes may bear upon their faces a declaration of the sovereign authority by which they are enacted and declared to be the law, and to promote and preserve uniformity in legislation. Such clauses also import a command of obedience and clothe the statute with a certain dignity, believed in all times to command respect and aid in the enforcement of laws. These are the sole purposes of an enacting clause. It is not of the essence of the law, adds nothing to its meaning, and furnishes no aid in its construction."

The enacting clause has served its constitutional purpose by being affixed to the bill in its journey through the two houses of the legislative assembly. It serves no purpose thereafter. The discrepancy shown here between the enacting clause of the bill as passed by the legislative assembly and as presented to the Governor, I think does not warrant us in holding that the bill passed by the legislative assembly was never presented to the Governor. Had the enacting clause been "Be it enacted by the people of the State of Montana acting through the Legislative Assembly," I have no doubt that the enacting clause would have been sufficient.

In the state of Kentucky the Constitution (sec. 62) provides that the style of all laws shall be, "Be it enacted by the general assembly of the Commonwealth of Kentucky." A law was passed with the enacting clause reading, "Be it enacted by the Legislature of the state of Kentucky." In that state

constitutional provisions are construed as mandatory, but the court upheld the Act in *Louisville Trust Co.* v. *Morgan*, 180 Ky. 609, 203 S. W. 555, 558, 7 A. L. R. 396, and said: ''The Act here in question has an enacting clause, but it is an imperfect one in the respect that it does not contain the precise words that it is specified in the Constitution an enacting clause should contain, but the defect is in form and not in substance, and the departure from the precise phraseology of the Constitution is neither misleading nor deceptive because the words 'Legislature' and 'General Assembly' are commonly used interchangeably, as are the words 'commonwealth' and 'state,' in various sections of the Constitution, in many legislative enactments as well as in court opinions, and there could be no misunderstanding on the part of any person arising from the use of the words employed in this enacting clause. (*Commonwealth* v. *Sherman*, 85 Ky. 686, 4 S. W. 790, 9 Ky. Law Rep. 218.) Under these circumstances, to hold void, for the reason suggested, an otherwise valid legislative enactment, would be sacrificing substance for mere technical form, and giving to mandatory constitutional directions a narrow, if not an absurd, meaning and effect. No court of last resort has held more consistently and firmly than has our court to the doctrine of mandatory construction of constitutional provisions, but we have as consistently refused to overthrow legislative enactments for frivolous and purely technical reasons.''

In Tennessee the constitutional provisions are mandatory. There it is provided that enacting clauses shall read, ''Be it enacted by the General Assembly of the State of Tennessee.'' (Art. II, sec. 20.) An Act was upheld where the enacting clause was, ''Be it enacted by the General Assembly of Tennessee.'' (*State ex rel. Gouge* v. *Burrow*, supra.) In sustaining the Act the court said: ''Can it, then, be said that the apparent omission of the three words, 'the state of,' which the human mind involuntarily and with absolute certainty supplies in reading the enacting clause of the statute, when all the purposes of the constitutional provisions are accomplished, can have the effect to vitiate a law otherwise duly enacted by the

General Assembly and approved by the Governor of the state? We think not. To hold that it did would be to sacrifice substance to the myth of noncompliance with a form in a matter where every purpose of the framers of the organic law had been fully effectuated. Such an absurd result was not intended and cannot be allowed. While some courts of last resort have held, as we do, that the constitutional provision here invoked is mandatory, yet no case has been called to our attention where a statute has been held void for a failure to comply with that provision, when the enacting clause used necessarily and conclusively expressed the same meaning and had the same effect, although not literally in the form used.''

In the case of *Smith* v. *Jennings*, 67 S. C. 324, 45 S. E. 821, 822, the mandatory provision of the Constitution (art. III, sec. 16) required that the style of all laws shall be, ''Be it enacted by the General Assembly of the State of South Carolina.'' An Act was upheld where the enacting clause read, ''Be it resolved by the General Assembly of the state of South Carolina.'' The court stated: ''We hold, while the constitutional provision as to form of enacting clause is mandatory, that a substantial compliance with the mandate will be sufficient. We cannot bring our mind to hold that an absolutely literal compliance with the form prescribed is essential to valid legislation.''

In Louisiana the constitutional provision relating to the enacting clause of bills is held to be directory merely, and hence decisions of that court would have no persuasive force here, but I desire nevertheless to call attention to the case of *City of Shreveport* v. *Dale*, 149 La. 439, 89 So. 408. There the Constitution required that the style of all laws shall be, ''Be it enacted by the General Assembly of the State of Louisiana.'' (Const. 1913, Art. XII.) An Act was sustained where the enacting clause was, ''Be it enacted.'' The court said that the defect consisted, not in the total absence of an enacting clause, but that the situation presented was ''that of a curtailed enacting clause, which has omitted words readily supplied by the attending circumstances.'' So here, the bill was authenticated by the signatures of the presiding officers of the two

houses, a circumstance that would not have existed had the Act been initiated directly by the people. That circumstance makes it conclusive that the Act was passed by the people ''in legislative assembly,'' and those words can be readily supplied in the enacting clause without changing its substance or meaning.

I think the law in question is not invalid by reason of the fact that, when presented to and signed by the Governor, it did not carry the exact constitutional clause. I reach this conclusion the more readily since, as here, the bill throughout its legislative journey carried the exact constitutional enacting clause, and since the error crept into the enrolled bill through mistake, inadvertence or design of some unauthorized person.

To hold this Act invalid, which throughout its journey in both houses had the accurate constitutional clause, and which, as to its operative provisions, had the appropriate sanction of both houses and the approval of the Governor in identical form, would be to place a bounty on carelessness or to permit the intentional act of some irresponsible person to nullify the Act of the legislative assembly. If this slight change in the enacting clause makes the bill presented to the Governor a different bill from that passed by the legislative assembly, then certainly the change of one word in the body of the Act would entail the same consequences. The majority opinion in effect places the veto power in the hands of an irresponsible employee of the legislative assembly who, through carelessness or design, can overthrow a legislative Act by changing one word in the bill prepared and presented to the Governor for his signature, though the changed word would not affect in the slightest the meaning of the Act.

This is not a case where ''the letter killeth, but the spirit giveth life.'' (II Corinthians 3:6.) Here the strict letter of the Constitution was complied with in the legislative assembly, and there was at least substantial compliance therewith thereafter. Both the letter and the spirit of the Constitution give life to Chapter 199, Laws of 1937.

I think the judgment of the trial court is correct and should be affirmed.

Mr. Justice Erickson:

I concur in the above dissenting opinion of Mr. Justice Angstman.

Rehearing denied December 11, 1939.